UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division



LATOYA K. BENTON, ADMINISTRATOR OF THE

ESTATE OF XZAVIER D. HILL, DECEASED

Plaintiff,

vs.

Seth W. Layton

**Individually and In His Official Capacity As A State Trooper For The Virginia State Police**

**Benjamin I. Bone**

**Individually and In His Official Capacity As A State Trooper For The Virginia State Police**

**Virginia State Police**

Defendant

AMENDED COMPLAINT

CIVIL ACTION NO.3:22 -CV-225
JURY TRIAL DEMANDED

Come Now the Plaintiff, LaToya K. Benton, Administrator of the Estate of Xzavier Hill, Deceased, by counsel, and moves this Court for judgment against Defendants, Seth W. Layton and Benjamin I. Bone, individually and in his official capacity as a police officer for the State of Virginia, on the following grounds:

## **INTRODUCTION**

This civil rights case arises from the unlawful shooting that killed of Xzavier D. Hill ("Mr. Hill"), a young, thriving, Black man, but also the violation(s) of Mr. Hill's rights to life, due process, and equal protection of law. At his very young age Xzavier was an outstanding contributor to society, his family, and his community already working as an apprentice at his mother's Government contracted cleaning service, part-time as a cashier at McDonald's, and summers as a local lifeguard during the summers. As a citizen of the United States of America Xzavier is guaranteed his constitutional rights to life, equal protection and due process all of which he was deprived of by Troopers Layton and Bone of the Virginia State Police. As Mr. Hill resides in an open carry state it should be reasonably expected he could possibly have a firearm. Simple knowledge of his possessing a firearm should not and cannot be a reasonable justification or conclusion by itself and without further investigation of any crime Troopers Layton and Bone took the intervention of shooting said the alleged possessor. Simple knowledge established at that time that Mr. Hill was well within his legal rights.

1. On January 9 2021, Virginia State Police Troopers Seth Layton and Benjamin Bone violated those rights by shooting young Mr. Hill three times, killing him while being stuck inside of his vehicle during a traffic stop.

2

2. When Officers Seth Layton and Benjamin Bone shot Mr. Hill, he was trapped inside of his vehicle. Officers Layton and Bone had pulled Mr. Hill over for a potential misdemeanor eluding and/or reckless driving offense. At the time Mr. Hill was killed his car was the well off the road and immobilized posing no threat to the Virginia State Troopers, passing traffic, or the community.

3. Mr. Hill's mother, LaToya K. Benton, brings this action in her capacity as the Administrator of her son's estate to vindicate Mr. Hill's rights under State and Federal law to be free of arbitrary, deadly violence by the police.

## JURISDICTION

5. Now while issue has been presented and the defendants have presented an-issue concerning whether that pro-se litigant was the sole beneficiary of said estate and whether Mrs. Benton can proceed pro-se for her son's estate. The Second Circuit has reached the same conclusion. "The administrator and sole beneficiary of an estate with no creditors," it has concluded, "may appear *pro se* on behalf of the estate." *Guest v. Hansen,* 603 F.3d 15, 21 (2d Cir.2010)

6. Documentations has been filed with the court to indeed prove Mrs. Benton is the sole beneficiary to Mr. Hill's estate (Attached exhibits a-b)

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it involves claims under federal law, namely 42 U.S.C. § 1983.

8. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a) over the state law claims, including claims alleged pursuant to Virginia Code § 8.01-50, *et seq.* (wrongful death statute), or, alternatively, pursuant to Virginia Code § 8.01-25, *et seq.* (survival statute).

## VENUE

8. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this district.

9. Assignment to the Richmond Division of the Eastern District of Virginia is proper pursuant to Eastern District of Virginia Local Rules 3(B)(4) and 3(C) because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this division.

## PARTIES

10. Plaintiff LaToya K. Benton, Administrator of the Estate of Mr. Hill, Deceased, at the time of the incident described herein, was an adult over the age of 18 and a resident of the Commonwealth of Virginia.

11. Plaintiff is the mother of Mr. Hill, who was an adult over the age of 18 and a resident of the Commonwealth of Virginia at the time of his death on January 9, 2021. A copy of Mr. Hill's Death Certificate is attached hereto as Exhibit C.

12. Plaintiff was qualified and duly appointed as Administrator of the Estate of Mr. Hill, Deceased, by the Charlottesville Circuit Court on May 19, 2021. A copy of the Certificate of Qualification is attached hereto as Exhibit D.

13. Defendants Seth W. Layton and Benjamin I. Bone ("Troopers Layton and Bone") were at the time of the incident described herein adult residents of the Commonwealth of Virginia. At all relevant times, Troopers Layton and Trooper Bone were employed by the Virginia State Police Department ("VSPD"), officially the Virginia Department of State Police

4

14. At all relevant times, Troopers Layton and Bone were acting in the course and scope of their employment with VSPD; as agents, servants and/or employees of VSPD; and under color of state law pursuant to 42 U.S.C. § 1983.

16. Defendant Virginia State Police ("VSPD") is a municipal corporation operating under the laws of the Commonwealth of Virginia.

17. At all relevant times, Virginia State Police Department operated, controlled and were the public employer of Troopers Layton and Bone.

## FACTUAL ALLEGATIONS

**As a citizen of the United States of America Mr. Hill is guaranteed his constitutional rights to life, equal protection, and due process all of which he was deprived of.**

18. On the morning of January 9, 2021, Mr. Hill was heading home after visiting with a friend at approximately 4:30 a.m., Virginia State Police were positioned in a "cross-over". Mr. Hill's sedan approached the cross-over at a speed of 96 miles per hour in a posted 65 miles per hour zone

    Once Mr. Hill passes the "cross-over", Troopers then began to follow Mr. Hill still yet to activate their vehicle's sirens or provide the State Police dispatcher with Mr. Hill's license plate information.

18. Initially Mr. Hill does begin to accelerate; there is no record of his actual speed. During this time Troopers activated their vehicles sirens.

19. Mr. Hill came to a complete stop on the right shoulder of the road before proceeding to make a U-turn into the westbound lanes of Interstate 64. This U-turn maneuver resulted in his becoming stuck in a ditch beyond the westbound shoulder and away from traffic. Immediately, both Troopers exit their vehicle with guns drawn on Mr. Hill and give him 17 various commands.

    Trooper Layton: Get out of the car now! Get out of the car now! Get out of the

5

Trooper Bone: Show me your hands, do it now!

Trooper Layton: Get out of the car now!

Trooper Bone: Put your hands up!

As Mr. Hill attempts to follow the commands he pleads with the troopers to be patient frantically calling out

Mr. Hill: 'My door doesn't open. My door doesn't open"

Both Troopers ignore Mr. Hill's terror and continue to shout commands that, due to the state of his vehicle, he could not immediately follow. Mr. Hill then places his left arm out of the window in an effect to open the door and comply with the Trooper's commands, still the Troopers continue to shout more commands.

Trooper Bone: "Put your hands up!"

Mr. Hill again pleading with the troopers: "My door doesn't open"

Trooper Bone: Put your hands out the door and do it now! Put your hands out the door!

Xzavier Hill: My door doesn't open.

Trooper Layton: Put your hands out the door! Stop moving! Put your hands out the door! Put your hands out the window! Put your hands out of the window!

21. Seconds later Trooper Layton yells: "hey he's reaching"

Trooper Bone: "stop reaching! Gun!"

Trooper Layton: "He's got a Gun! Gun! Gun!"

Not allowing Mr. Hill the opportunity to comply with all commands given by the officer immediately, and without warning, clear visibility, or pursuing any alternative measures Troopers Layton and Bone fired their police-issued

6

firearms at Mr. Hill, shooting him three times and killing him.

22. Only after killing Mr. Hill did one of the Troopers ask him to "drop the weapon," however by this time it was too late, and Mr. Hill was deceased in his passenger seat.

23. At no relevant times was Mr. Hill speaking or acting in a manner that would suggest that he posed *any* threat, let alone a *deadly* threat, to Troopers Layton and/or Bone or anyone else. He was in fact clearly pleading that he was stuck inside of his vehicle and scared for his life. Upon viewing the trooper Dash-Camera footage, Troopers Layton and Bone failed to issue any warning prior to firing their police-issued firearms and ending Mr. Hills life. Which is clearly stated in the Virginia State Police Department Use of force policy page 2(6a2) If feasible, the sworn employee has provided a warning to the subject of deadly force that they will use deadly force.

## TROOPERS LAYTON AND BONE FAILED TO DEESCALATE THE SITUATION IN A NON-VIOLENT MANNER.

26. During the incident, Troopers Layton and Bone failed to make any reasonable effort to address and/or diffuse the situation in a non-violent or non-lethal manner. Considering the Troopers shouted over 17 commands to Mr. Hill, neither Trooper issued any warning prior to firing their police-issued firearms at Mr. Hill, despite the fact that it was "feasible" to provide a "verbal warning such as 'I'll shoot,'" as required by VSPD's General Order 5.01.

27. This violates Virginia State Police Department policies, including those re-emphasized in the wake of George Floyd's murder.

28. During the incident, Troopers Layton and Bone failed to make any reasonable effort to address and/or diffuse the situation in a non-violent or non-lethal manner.

29. Rather, Troopers Layton and Bone jumped straight to the use of their department-issued firearms, fatally shooting Mr. Hill three times.

7

36. Upon viewing the dash camera footage provided, Troopers Layton and Bone not only failed to render life-saving medical aid and/or failed to cause others to render life-saving medical aid to Mr. Hill after three of four bullets struck Mr. Hill, in violation of Virginia State Police Operational General Order 5.01, but they also participated in moving Mr. Hill's wounded body that further undermined his ability to survive and said to "let him go"

37. As a result of Troopers Layton and Bone's actions, Mr. Hill died at the scene on January 9, 2021.

38. Based on the events on the night Troopers Layton and Bone killed Mr. Hill, it can be reasonably inferred that the Virginia State Police Department either has inadequate policies and procedures to keep officer use of force within lawful, constitutional limits, or that the Virginia State Police Department has such policies but fails to train its officers to follow them, or to enforce stated policies.

39. No reasonable, appropriately trained and supervised officer would have committed any of the actions taken by Troopers Layton and Bone on the morning of Mr. Hill's death, let alone all of them. With the rising issues of police brutality today and under the circumstances presented by the morning in question, a reasonable, adequately trained officer would have deescalated the situation. Upon learning that he posed no threat whatsoever especially being trapped inside his vehicle, the Troopers should have performed a routine traffic stop, and Mr. Hill should be alive today.

41. Troopers Layton and Bone did the opposite: immediately Troopers Layton and Bone drew their firearms and fired four shots, three hitting Mr. Hill. Both troopers neglected to render potentially life-saving aid, and instead chose to move Mr. Hill's wounded body to the ground, contributing to his death and stating to "let him go."

# VIRGINIA STATE POLICE HAS A LONG-STANDING PATTERN OF POLICE MISCONDUCT.

42. On the night of Mr. Hill's murder, Troopers Layton and Bone acted in line with the long-standing pattern within the Virginia State Police Department of failing to enforce important safety policies.[1] These problems are far too old in Virginia.

43. Mr. Hill being deprived of his right to equal protection, and his right to life, was done pursuant to the preexisting and ongoing deliberate indifference to the rights of citizens in the Commonwealth of Virginia to be free from excessive force by the State Police, and Defendants Layton, Bone and Virginia State Police have ongoingly encouraged, tolerated, ratified, and acquiesced to this dangerous environment of police brutality by: (a) failing to conduct sufficient training or supervision with respect to constitutional limitations on the use of force; (b) by failing to adequately punish unconstitutional uses of force; (c) by tolerating the use of unconstitutional force; (d) by ongoingly failing to properly or neutrally investigate citizen complaints of violence; and (e) by tolerating, encouraging, and permitting the filing of inaccurate and intentionally misleading police reports in an attempt to cover up misconduct.

45. Unfortunately, years later, the situation remains unchanged. In 2017, a Virginia State Police Trooper Hughes slammed Vernon Greenaway to the ground chin first causing him to shatter his jaw, lose teeth and suffer contusions to his face and shoulder. Mr. Greenaway brought suit against VSPD for using excessive force under Section 1983 and Virginia law, and January 2019 a settlement had been reached.

## COUNT I – 42 U.S.C. § 1983 – EXCESSIVE FORCE

48. Plaintiff realleges and incorporates paragraphs 1 – 47, as if fully set forth herein.

9

49. Count I is brought against Troopers Layton and Bone in his individual capacity and in his official capacity as a police officer of VSPD.

50. Trooper Layton and Bone used lethal force against Mr. Hill, who was trapped inside his vehicle, posed no danger to Trooper Layton and Bone or anyone else, and was pleading with Troopers his car door was stuck.

51. The shooting was motivated at least in part by Mr. Hill's race as a Black man. The shooting further constituted an excessive and unreasonable use of force under the totality of the circumstances, and it deprived Mr. Hill of remedies, privileges, and immunities guaranteed to every citizen of the United States, including, but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

52. At all relevant times, Trooper Layton and Bone was acting as an agent, servant, and/or employee of Virginia State Police. In his individual and official capacities, Trooper Layton and Bone acted within the scope of his employment as a VSP officer and under pretense and color of state law.

53. As a direct and proximate result of Trooper Layton and Trooper Bone's unreasonable and wrongful use of force that violated Mr. Hill's civil and constitutional rights, Mr. Hill died on January 9, 2021. No reasonable Trooper in Trooper Layton or Trooper Bone's position would have acted in the wrongful manner Troopers Layton and Bone did, under the circumstances presented on the night in question.

54. Troopers Layton and Bone acted willfully, knowingly, and with specific intent to deprive Mr. Hill of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

**COUNT II – 42 U.S.C. § 1983 – FAILURE TO PROPERLY TRAIN AND SUPERVISE**

**(Virginia State Police's Custom and Policy)**

57. Plaintiff realleges and incorporates paragraphs 1 – 56, as if fully set forth herein.

10

58. Count II is brought against the Virginia State Police, which is responsible for the training and supervision of its Police Department.

**Troopers Layton and Bone ACTUALLY VIOLATED MR. HILL'S CONSTITUTIONAL RIGHTS**

59. As alleged in Count I, Troopers Layton and Bone, in their capacities as subordinates of the State of Virginia, did violate Mr. Hill's rights guaranteed by the Constitution of the United States, including but not limited to the Fourth and Fourteenth Amendments, by unlawfully murdering him.

**THE STATE OF VIRGINIA EXHIBITED DELIBERATE INDIFFERENCE TO THE RIGHTS OF PERSONS LIKE MR. HILL BY FAILING TO ADEQUATELY TRAIN ITS OFFICERS**

60. In cases such as Vernon Greenaway, prior to the death of Mr. Hill, Virginia State Police failed to properly enforce its policies, or to train, instruct, and/or supervise its police officers, including Troopers Layton and Bone, on potential suspects with a gun in the field, use of force, use of BWCs, and rendering of potentially life-saving medical aid.

61. Virginia State Police's failure to enforce its policies and to train and supervise its troopers led to the string of fatal errors by Troopers Layton and Bone on the morning of January 9, 2021 and illustrates the city's deliberate indifference to the rights of persons who come into contact with VSP troopers.

*Virginia State Police Failed to Properly Train, Instruct, and/or Supervise Its Officers To Avoid Violations of the Fourth and Fourteenth Amendment in Situations They Are Certain to Regularly Face.*

62. Virginia State Police can expect that its police officers will regularly confront situations in which their lack of adequate training in, *inter alia*, deescalating of situations, proper use of force, and rendering potentially life-saving medical aid, will result in obvious violations of constitutional rights. Its failure to adequately train its troopers to respond to such situations constitutes deliberate indifference.

63. Virginia State Police failed to properly train, instruct, and/or supervise its officers: (1) as to the proper circumstances under which to draw a firearm and/or use deadly force; or (2)

11

as to the proper techniques for exhausting all reasonable non-violent alternatives before using deadly force, including but not limited to professional presence/identification, verbalization, soft control techniques, intermediate techniques, hard control techniques, and/or non-lethal force.

64. In cases such as that of Vernon Greenaway, prior to the death of Mr. Hill, Virginia State Police failed to properly train, instruct and/or supervise all of its police officers, including Troopers Layton and Bone: (1) as to the proper way to deescalate a situation when a firearm is involved; or (2) as to the proper way to arrange for or render proper medical aid in an emergency situation.

65. Upon information and belief, Virginia State Police was aware that its inadequate training, instruction, supervision, and lack of enforcement of its stated policies made it substantially more likely that individual like Mr. Hill would be subjected to unreasonable and/or deadly force by Virginia State Police Officers, be subjected to encounters with police officers that are properly deescalate, and/or be subjected to improper care in emergency situations.

66. Virginia State Police Department's formal, written policies mandate that a law enforcement officer shall: (1) not use deadly force against a person except in certain situations (Virginia Code § 19.2-83.5); (2) "exhaust" all non-lethal force options when possible (*id.*) and offer "when feasible, a verbal warning such as 'Police, stop or I'll shoot.'" (VSPD Gen. Ord 5.01 at 2); (3) ask questions about injuries to a victim who has had force used on them by a police officer while the officer wears a Worn Body Camera (CALEA 4.1.5); and (4) offer medical assistance to those who have force used on them by a police officer (*id.*).

67. Operational General Order 5.01 "Use of Force" states that "officers have the ability to impact the direction and the outcome of many situations they encounter, based on their decision-making and the tactics that they choose to employ." CALEA 4.1.1, 4.2.5.

12

68. Troopers Layton and Bone were not properly trained, instructed, or supervised to follow Troopers Layton and Bone were not properly trained, instructed, or supervised to follow Operational General Order 5.01, nor was compliance with Operational General Order 5.01 enforced.

As a result, both Troopers failed to exercise such decision-making and employ the appropriate tactics. Lacking proper training, instruction, or supervision, each trooper instead employed a tactic that violated the "objectively reasonably force" permitted by the policy and shot and killed Mr. Hill, even though Mr. Hill was trapped inside of his vehicle posing no threat and having received no verbal warning.

69. Upon viewing the dash camera footage provided Troopers Layton and Bone did not attempt any non-lethal force options, let alone "exhaust" them. Instead, they shouted over 17 different commands completely ignoring Mr. Hill's plea that his door is door broken and escalated straight to firing his deadly weapon upon encountering Mr. Hill. A properly trained, instructed, or supervised trooper would have acted otherwise.

70. Upon viewing the dash camera footage provided, due to their lack of training, instruction, and supervision, neither Trooper rendered medical assistance to Mr. Hill after they had used lethal force used on him. Instead of rendering aid to Mr. Hill after shooting Mr. Hill three times both troopers then dragged his body to the ground and agreed to "let him go." Properly trained, instructed, or supervised troopers would have acted otherwise.

71. Inadequate training, instruction, and/or supervision in and of these policies constitutes deliberate indifference on the part of Virginia State Police to the rights of those persons, including Mr. Hill, whom its police officers are likely to encounter.

> *Virginia State Police Department Has Longstanding Policies, Customs, and Practices That Are Known to be Unconstitutional or Cause Unconstitutional Encounters with Police.*

13

73. Virginia State Police knew that its longstanding failure to adequately train its police officers resulted in a pattern of constitutional violations. Virginia State Police's failure to train its police officers despite these known constitutional violations constitutes deliberate indifference.

74. In addition to inadequate training, instruction, and/or supervision of the written procedures, there are long-standing practices and customs that were known, permitted to continue, and ultimately caused the violation of Mr. Hill's Fourth Amendment rights and ultimately his untimely and tragic death.

75. Such inadequate long-standing practices and customs include inadequately training and enforcing the Body Worn Camera policy, inadequately training officers to exhaust all alternatives to the use of deadly force, allowing a pattern of unconstitutional use of deadly force, failing to instruct and ensure the proper rending of medical aid to victims, and failing to enforce its own stated policies.

76. The steady stream of lawsuits against VSPD and its officers for using excessive force over decades indicates that Troopers Layton and Bone's use of force was not an aberration particular to a "rogue" officer. Troopers Layton and Bone are not the exception at VSPD.

**THE VIRGINIA STATE POLICE DEPARTMENT'S FAILURE TO TRAIN AND SUPERVISE ITS TROOPERS WAS A CAUSE OF MR. HIIL'S MURDER BY TROOPER LAYTON AND BONE**

77. Mr. Hill's death is yet another tragic result of VSPD's longstanding and ongoing failure to train its troopers to use force in a lawful manner, to enforce its stated policies, and to instill the serious nature of using deadly force in the field.

78. These failures of training and enforcement of its policies resulted in the shooting that violated Mr. Hill's Fourth and Fourteenth Amendment Constitutional Rights and ultimately cost him his life. Had the Virginia State Police Department properly trained Troopers

14

Layton and Bone or enforced its policies, each trooper would have, inter alia, before shooting, exhausted all non-lethal responses to his encounter with Mr. Hill before using deadly force, and rendered potentially life-saving aid to Mr. Hill so that Mr. Hill could have survived his injuries.

79. As a direct and proximate result of Virginia State Police Department failing to perform its ministerial duties as stated above—both in failing to train, instruct, and/or supervise; and in allowing persistent and widespread failures in custom and policy to remain unaddressed—Mr. Hill was subjected to the unconstitutional use of force by Troopers Layton and Bone, and was thereby deprived of his civil rights as guaranteed under the United States Constitution, both State and Federal statutes, and ultimately his life.

## COUNT III – GROSS NEGLIGENCE

83. Plaintiff realleges and incorporates paragraphs 1 – 82, as if fully set forth herein.

84. Count III is brought against Troopers Layton and Bone in their individual capacities and in their official capacities as State Troopers of the Virginia State Police.

85. During the incident, it was Troopers Layton and Bone's duty as a sworn VSP Troopers in the Commonwealth of Virginia to act with reasonable care and due regard for persons within the community, including Mr. Hill.

86. Without limitation, Troopers Layton and Bone breached said duty in the following particulars:

   a. Failed to make a reasonable inquiry into Mr. Hill's identity or motivation prior to using deadly force;

   b. Failed to attempt to stop or halt Mr. Hill, or use other non-lethal force to ascertain the situation prior to using deadly force;

   c. Failed to make a reasonable effort to determine whether Mr. Hill posed a viable threat prior to firing his weapon;

15

d. Failed to exhaust all other reasonable alternatives before using deadly force, including but not limited to professional presence/identification, verbalization, soft control techniques, intermediate techniques, hard control techniques, and/or less lethal force;

e. Failed to use only that level of force necessary to successfully accomplish legitimate police functions and/or objectives and which was commensurate with the level of threat presented;

f. Failed to use a reasonable type and degree of force based upon the facts of the situation and that was commensurate with the level of threat presented;

g. Failed to render life-saving medical aid and/or failed to cause others to render lifesaving medical aid to Mr. Hill after shooting him three times; and

87. The aforesaid conduct and actions of Troopers Layton and Bone demonstrated such an indifference to Mr. Hill as to constitute an utter disregard of caution or prudence, amounting to a complete neglect of the safety of Mr. Hill. Troopers Layton and Bone's gross negligence, as described herein, is conduct that would shock the conscience of fair-minded people.

88. As a direct and proximate result of Troopers Layton and Bone's aforesaid conduct, Mr. Hill died on January 9, 2021.

89. As a further direct and proximate result of the conduct of Troopers Layton and Bone, Plaintiff claims additional damages for medical expenses; reasonable funeral expenses; sorrow, mental anguish, and solace, including loss of society, companionship, comfort,

16

guidance, kindly offices and advice; compensation for reasonably expected loss of income of the decedent; and such other damages as set forth pursuant to Virginia Code § 8.01-52.

90. Plaintiff is a statutory beneficiary of Xzavier D. Hill, Deceased.

## COUNT IV – ASSAULT AND BATTERY

91. Plaintiff realleges and incorporates paragraphs 1 – 90, as if fully set forth herein.

92. Count IV is brought against Troopers Layton and Bone in their individual capacities and in their official capacities as State Troopers of Virginia State Police.

93. In the course of shooting Mr. Hill on January 9, 2021, Troopers Layton and Bone committed an assault and battery against Mr. Hill, i.e., by discharging at least four bullets from their police-issued weapons that struck Mr. Hill in an offensive manner against his will, and/or by placing Mr. Hill in reasonable fear that he may receive further imminent bodily harm and/or injury.

94. Said conduct on the part of Troopers Layton and Bone was committed without legal justification or excuse.

95. As a direct and proximate result of Troopers Layton and Bone's aforesaid conduct, Mr. Hill was injured on January 9, 2021, and died on January 9, 2021.

96. As a further direct and proximate result of the conduct of Troopers Layton and Bone Plaintiff claims additional damages for medical expenses; reasonable funeral expenses; sorrow, mental anguish, and solace, including loss of society, companionship, comfort, guidance, kindly offices and advice; compensation for reasonably expected loss of income of the decedent; and such other damages as set forth pursuant to Virginia Code § 8.01-52.

97. Plaintiff is a statutory beneficiary of Xzavier D. Hill, Deceased.

## COUNT V - SURVIVORSHIP

98. Plaintiff realleges and incorporates paragraphs 1 – 97, as if fully set forth herein.

17

99. Count V is brought against Troopers Layton and Bone in their individual capacities and in their official capacities as State Troopers of the Virginia State Police.

100. The aforesaid acts and omissions of Trooper Layton and Bone proximately caused Mr. Hill to suffer great pain and anguish from the time he was shot by Trooper Layton and Bone until the time of his death on January 9, 2021.

101. As a direct and proximate cause of the aforesaid acts and omissions of Trooper Layton and Bone the Estate of Xzavier D Hill is entitled to damages for the significant pain and suffering that Mr. Hill endured while still alive.

### COUNT VI – VIRGINIA CODE § 8.01-50, *et seq.* – WRONGFUL DEATH

102. Plaintiff realleges and incorporates paragraphs 1 – 101, as if fully set forth herein.

103. Count VI is brought against Troopers Layton and Bone in their individual capacities and in their official capacities as a State Troopers of the Virginia State Police.

104. Mr. Hill's death was caused by the wrongful, reckless, grossly negligent, and/or excessive use of force by Troopers Layton and Bone.

105. Had Mr. Hill survived Troopers Layton and Bone's wrongful, reckless, grossly negligent, and/or excessive uses of force, he would have been entitled to maintain an action against him and recover damages in respect thereof.

106. As a further direct and proximate result of Troopers Layton and Bone's aforesaid acts and omissions, Plaintiff claims additional damages for medical expenses; reasonable funeral expenses; sorrow, mental anguish, and solace, including loss of society, companionship, comfort, guidance, kindly offices and advice; compensation for reasonably expected loss of income of the decedent; and such other damages as set forth pursuant to Virginia Code § 8.01-52.

107. Plaintiff is a statutory beneficiary of Xzavier D. Hill, Deceased.

18

## COUNT VII – PUNITIVE DAMAGES

108. Plaintiff realleges and incorporates paragraphs 1 – 107, as if fully set forth herein.

109. Count VII is brought against Trooper Layton and Bone in their individual capacities and in their official capacities as a State Troopers of the Virginia State Polices.

110. The acts and omissions of Troopers Layton and Bone that directly and/or proximately caused the death of Mr. Hill, including but not limited to the application of deadly force against Mr. Hill, constituted acts and omissions which under the circumstances amounted to a willful, wanton, reckless, malicious, brutal, and violent disregard of the rights and safety of Mr. Hill and for which an award of punitive damages is warranted.

111. As a direct and proximate result of the aforesaid conduct, Mr. Hill was deprived of his civil rights as guaranteed under the United States Constitution, and state and federal statutes; and Mr. Hill died on January 9, 2021.

112. As a further direct and proximate result of Troopers Layton and Bone's conduct as aforesaid, plaintiff claims an award of punitive damages pursuant to Virginia Code § 8.01-52.

113. Plaintiff is a statutory beneficiary of Xzavier D. Hill, Deceased.

WHEREFORE, Plaintiff, LaToya K. Benton, Administrator of the Estate of Xzavier D. Hill, Deceased, pro se litigate , demands judgment against Defendants, Seth W. Layton and Benjamin I Bone, individually and in their official capacities as State Troopers for the State of Virginia and the Virginia State Police Department jointly and severally, for damages in the amount of Sixty Million Dollars ($60,000,000.00), together with the cost of this action, attorneys' fees, prejudgment interest from January 9, 2021, and any other relief this Court deems just, proper and equitable. Plaintiff further requests punitive damages be awarded against Defendants, Seth W.

Layton and Benjamin Bone, Individually and in their official capacities as State Troopers for the

Virginia State Police Department, in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00).

    Finally, Plaintiff demands a trial by jury.

LATOYA K. BENTON,
ADMINISTRATOR OF THE ESTATE
OF XZAVIER D. HILL, DECEASED

By: /s/ *L. Benton*

LaToya Benton
Xzaviers Mother
Telephone: (240) 779-7360
Email: justiceforxzavier21@gmail.com

## CERTIFICATE OF SERVICE

    I hereby certify that on 6/30/2022, I electronically filed the foregoing Amended Complaint using the CM/ECF system at the Eastern District Court of Richmond, which will then send a notification of such filing to all counsel of record.

*L. Benton*