IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| LATOYA K. BENTON, Administrator of the Estate of Xzavier D. Hill, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> SETH W. LAYTON, individually and in his official capacity as State Trooper for the Virginia State Police, *et al.*, <br><br> Defendants. | Civil Action No. 3:22-cv-225–HEH |

## <u>MEMORANDUM OPINION</u>
### (Granting in Part and Denying in Part Defendants' Motion to Dismiss)

This civil rights case arises from the death of Xzavier D. Hill ("Hill" or "the Deceased"). On January 9, 2021, Virginia State Troopers Seth W. Layton ("Layton") and Benjamin Bone ("Bone") (collectively "the Troopers"), pursued a vehicle that was traveling 96 miles per hour, well over the posted speed limit. (Am. Compl. ¶ 18, ECF No. 5.) After the vehicle was stopped, the Deceased allegedly disregarded the Troopers' instructions and reached for a handgun. In response, the Troopers fired shots killing Hill. Latoya K. Benton ("Plaintiff"), the decedent's mother, brings this wrongful death and civil rights case as the Administrator of the Estate of Xzavier Hill against Layton and Bone and the Virginia State Police ("VSP" and collectively, "Defendants").

This lawsuit is presently before the Court on a Motion to Dismiss for Lack of Jurisdiction (the "Motion") filed by Defendants. (Mot., ECF No. 12.) They contend that

1

the suit against them is barred by the Eleventh Amendment and that the Court lacks jurisdiction because a personal representative of an estate may not bring a wrongful death action *pro se*. (Defs.' Mem. Supp. at 2–4, ECF No. 13.) As required by the standard of review governing this stage of the proceedings, this Court's analysis is both informed and constrained by the four corners of the Complaint and documents incorporated therein.[1] Both sides have submitted memoranda supporting their respective positions. The Court will dispense with oral argument because the facts and legal contentions have been adequately presented to the Court, and oral argument would not aid in the decisional process. *See* E.D. Va. Local Civ. Rule 7(J). For the reasons that follow, Defendants' Motion will be granted in part and denied in part.

## I. BACKGROUND

Viewed in the light most favorable to Plaintiff, at this stage of the proceedings, and taking all allegations in the Amended Complaint as true, the facts are construed as follows for the purpose of resolving the Motion to Dismiss. On January 9, 2021, at approximately 4:30 a.m., Layton and Bone observed Hill's car traveling at a speed in excess of 96 miles per hour in a posted 65 miles per hour speed zone. (Am. Compl. ¶ 18.) Layton and Bone began pursuing Hill but did not activate their emergency equipment until Hill continued to accelerate. (*Id.*) At some point, Hill brought his car to a full stop on the right shoulder before attempting to make a U-turn into the westbound

---

[1] Defendants asked the Court to consider the dashcam footage from the night of the incident even though it was not filed with the Amended Complaint. The immediate motion turns on whether Plaintiff has standing to bring this action on behalf of Hill's estate. Consequently, the video has no evidentiary value at this stage of the proceeding.

lanes of Interstate 64. (*Id.* ¶ 19.) However, Hill's vehicle became stuck in a ditch on the westbound shoulder of the interstate. (*Id.*)

After observing that Hill's vehicle was stuck, Layton and Bone approached Hill's vehicle on foot with their guns drawn. (*Id.*) They gave Hill a number of commands, including to exit the vehicle and put his hands up. (*Id.*) Plaintiff alleges that Hill attempted to comply with the officers' orders but could not because his door would not open. (*Id.*) Plaintiff further alleges that Layton and Bone ignored Hill's repeated statements that his door would not open and continued to demand that he "[p]ut [his] hands out [of] the door." (*Id.*) Layton and Bone observed Hill reaching across the seat, and Bone commanded Hill to "stop reaching! gun [sic]." (*Id.*) Hill did not immediately comply and continued reaching across the seat. (*Id.*) In response, Layton shouted, "He's got a Gun!" (*Id.* ¶ 21.) Plaintiff alleges that the officers, "without warning, clear visibility, or pursuing any alternative measures," fired at Hill three times, resulting in his death. (*Id.*)

On April 14, 2022, Plaintiff filed this suit *pro se* in her capacity as administrator of Hill's estate and sole beneficiary. (Compl., ECF No. 1.) Defendants filed a Motion to Dismiss (ECF No. 6) on June 20, 2022. However, the Court denied the motion as moot because Plaintiff filed an Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) on June 30, 2022, which superseded Plaintiff's original complaint and required a new responsive pleading. In her Amended Complaint, Plaintiff brings six claims pursuant to 42 U.S.C. § 1983. Count I alleges that Layton and Bone used excessive force against Hill. Count II, against the VSP, alleges that the VSP failed to

3

properly train and supervise its officers. Count III alleges gross negligence, and Count IV alleges assault and battery against Layton and Bone. Count V alleges survivorship, and Count VI is a wrongful death claim brought pursuant to Virginia Code § 8.01-50, *et seq.*, against both Layton and Bone. Counts I and III–VI are all brought against Layton and Bone in their individual and official capacities. On July 14, 2022, Defendants filed the immediate Motion alleging a lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Mot. at 1.)

## II. STANDARD OF REVIEW

A motion made pursuant to Rule 12(b)(1) challenges the Court's jurisdiction over the subject matter of a complaint. Such challenge can be facial or factual. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). A defendant alleges a factual challenge when they argue that "the jurisdictional allegations of the complaint are not true" and therefore, the court may look beyond the allegations in the complaint and conduct an evidentiary hearing. *Id.* (internal quotations omitted). On the other hand, a facial challenge occurs when a "defendant contends 'that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based.'" *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). For a facial challenge, "the plaintiff is 'afforded the same procedural protection as she would receive under a Rule 12(b)(6) consideration.'" *Id.* Defendants here are waging a facial challenge. (Defs.' Mem. Supp at 1–2.) Thus, the familiar Rule 12(b)(6) standard of review applies to the Motion even though it was brought under Rule 12(b)(1). *See Beck*, 848 F.3d at 270.

4

Under the Rule 12(b)(6) standard, the Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (alteration in original) (quoting *Tobey*, 706 F.3d at 387). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, a court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

Lastly, it is well established that district courts must liberally construe a *pro se* litigant's complaint. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). Courts, however, need not attempt "to discern the unexpressed intent of the plaintiff." *Id.* Nor does the requirement of liberal construction excuse a clear failure in the pleadings to allege a federally cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990). As the United States Court of Appeals for the Fourth Circuit explained in *Beaudett v. City of Hampton*, "[t]hough [*pro se*] litigants cannot, of course,

5

be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." 775 F.2d 1274, 1276 (4th Cir. 1985).

### III. ANALYSIS

Defendants first argue that the Court lacks jurisdiction to adjudicate the claim against the VSP because state agencies are privy to the same Eleventh Amendment immunity as the State itself. (Defs.' Mem. Supp. at 3.) The United States Supreme Court has said that, pursuant to the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). This immunity also extends to "state agents and state instrumentalities" because when the action is against a state agency for money, it "is in essence one for the recovery of money from the state." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 248 (4th Cir. 2012). Thus, the state is the "substantial party in interest and is entitled to invoke its sovereign immunity." *Regents of the Univ. of Cal.*, 519 U.S. at 429. State police departments are considered arms of the state and are immune from civil liability. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70 (1989) (holding that the Michigan State Police Department was an "arm[] of the state" and hence immune from suit under § 1983).

Plaintiff attempts to rely on *Monell v. Department of Social Services of the City of New York* to say that the injury suffered in this action was the result of the implementation of a policy or custom of the VSP. (Pl.'s Resp. Opp'n at 7–8, ECF No.

6

14); 436 U.S. 658, 694 (1978). However, Plaintiff misunderstands the import of the Supreme Court's holding in *Monell*. In *Monell*, the Court held that a *local* government, or a *municipality*, may be responsible under § 1983 when the execution of that government's policy or custom inflicts injury. 436 U.S. at 694. *Monell* has not been interpreted to extend § 1983 liability to policies or customs made by *state* governments or its agents. *See Gray v. Lewis*, 51 F.3d 426, 431 (4th Cir. 1995) (finding the Eleventh Amendment protects "states, state entities, and state officials" but not local governments) (citing *Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 401 (1979)). This is a critical distinction in this case as Plaintiff is suing the *Virginia State* Police and its Troopers, not a local government or municipality nor agents of either. Thus, the Motion to Dismiss will be granted as to the Virginia State Police and Count II will be dismissed in its entirety.

For the same reason, Defendants argue that the Eleventh Amendment bars suit against Troopers Layton and Bone in their official capacities. (Defs.' Mem. Supp. at 3.) In addition to shielding states from suit, the Eleventh Amendment also protects state officials acting in their official capacity "because a 'suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.'" *Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir. 2001) (quoting *Will*, 491 U.S. at 71)). Here, Plaintiff has brought her claims against Layton and Bone in both their official and individual, or personal, capacities. (Am. Compl. ¶¶ 48–57, 83–113.) Defendants only make an argument as to Layton and Bone's Eleventh Amendment

7

immunity for the claims against them in their official capacity, not the claims against them in their personal capacity.

The Supreme Court has been clear on the distinction between personal and official capacity suits and the types of immunity applicable to each. *Graham*, 473 U.S. at 165–67; *Hafer v. Melo*, 502 U.S. 21, 25–26 (1991). Personal capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law." *Graham*, 473 U.S. at 165. On the other hand, official capacity suits "generally represent only another way of pleading an action against an entity which an officer is an agent" and is "in all respects other than name, to be treated as a suit against the entity." *Id.* at 165–66 (internal quotations omitted); *Adams v. Ferguson*, 884 F.3d 219, 225 (4th Cir. 2018). This is so because "an award of damages against an official in his personal capacity can be executed against the official's personal assets" while an award of damages against them in their official capacity would be executed against the government entity itself. *Graham*, 473 U.S. at 166; *Adams*, 884 F.3d at 225.

Due to the nature of this distinction, an official sued in his personal capacity may raise personal immunity defenses such as absolute or qualified immunity, however, these types of immunity are unavailable for an official sued in his official capacity. *Graham*, 473 U.S. at 166–67. An official sued in his official capacity may only raise the forms of sovereign immunity that the entity itself possesses, such as the Eleventh Amendment. *Id.* at 167; *see Hafer*, 502 U.S. at 25. Thus, Plaintiff's claims against Layton and Bone in their official capacity as State Troopers are essentially claims against the VSP and Layton and Bone may raise Eleventh Amendment immunity. As discussed above, Eleventh

Amendment immunity bars the VSP and its officials from suit. Consequently, the *official-capacity* claims against Layton and Bone will be dismissed and the only claims left will be those against them in their personal capacities.[2]

Finally, Defendants argue that "[t]his Court lacks jurisdiction to adjudicate claims brought by a *pro se* administrator of an estate." (Defs.' Mem. Supp. at 4.) Defendants rely on the Supreme Court of Virginia's decision in *Kone v. Wilson*, in which the court held a personal representative could not bring a wrongful death action *pro se* because "[t]he *cause of action* . . . does not belong to the personal representative but to the decedent's beneficiaries identified in [Va.] Code § 8.01-53." 630 S.E.2d 744, 746 (Va. 2006) (emphasis in original). Defendants read this to mean that the Supreme Court of Virginia "categorically prohibits a personal representative of an estate from acting *pro se*." (Defs.' Mem. Supp. at 4.)

Although the import of *Kone's* prohibition on *pro se* personal representatives is not entirely clear, the Court notes that the facts of this case differ slightly from those in *Kone* and federal courts have since held that *Kone* is not a full bar against *pro se* personal representatives. *See Witherspoon v. Jeffords Agency, Inc.*, 88 F.App'x 659, 659 (4th Cir. 2004) (unpublished) (noting that other circuits have held that a personal representative cannot represent an estate *pro se*, only if there are other beneficiaries); *see also Chapman v. Wal-Mart Stores East, LP*, No. 2:17cv283, 2018 WL 2144489 at *1 (E.D. Va. Sept. 20,

---

[2] Defendants made no absolute or qualified immunity arguments as to the personal capacity claims. However, even if they did, the Court believes this is a close case and a more fulsome record would be necessary to dismiss based on personal immunity defenses.

9

2017); *Cadmus v. Williamson*, No. 5:15cv45, 2016 WL 8376572, at *5 (W.D. Va. Aug. 23, 2016). In *Kone*, the personal representatives were not also *beneficiaries*, so they did not have a personal interest in the case. Here, however, Plaintiff is both the personal representative and sole beneficiary of the Deceased's estate, so she has a personal interest in the action. (*See* Order at 6, ECF No. 23.) The court in *Kone* stressed that the cause of action in a wrongful death suit belongs to the decedent's beneficiaries. Thus, the personal representative is just a "surrogate for the decedent's beneficiaries." *Kone*, 630 S.E.2d at 746. However, the distinction between personal representatives and beneficiaries is not present in this case.

Further, federal courts in Virginia and the Fourth Circuit have considered *Kone* and found that a beneficiary of an estate may bring a wrongful death action *pro se* if they show that they are the *only* beneficiary. *Chapman*, 2018 WL 2144489, at *4 (citing the court's previous Order, ECF No. 23, and noting that Plaintiff needed counsel because she was not the sole beneficiary); *Witherspoon*, 88 F.App'x at 659; *Cadmus*, 2016 WL 8376572, at *5. Thus, if Plaintiff can show she is the sole beneficiary of the Deceased's estate, she may bring this action *pro se*.

Plaintiff has demonstrated that she is the sole beneficiary of the Deceased's estate. (Am. Compl. ¶ 5–6.) She states that she is the sole beneficiary in the Amended Complaint (*id.*) and provides further proof with a notarized Waiver of Rights of Estate signed by the Deceased's father (ECF No. 10-1 at 1). Additionally, Plaintiff filed the Medical Examiner's Certificate, which states that decedent was never married. (*Id.* at 2.) Moreover, Plaintiff filed an "Affidavit Letter of Support" stating that the Deceased "had

no wife or children nor any other creditors/beneficiaries of his estate." (Aff. at 1, ECF No. 14-1.)

Defendants raise the concern that "Virginia Code § 8.01-53 identifies specific statutory beneficiaries to an award granted pursuant to a wrongful death judgment" and that those statutory beneficiaries are not determined until a jury verdict or judgment of the court is reached. (Defs.' Mem. Supp. at 5.) While this is theoretically true, the above-mentioned cases stressed the need to demonstrate that the *pro se* representative was the sole beneficiary well before the court issued a judgment. None of the cases raised the concern that statutory beneficiaries could come out of the shadows to claim the award at the end of the case.

Viewing the record at hand, it is clear at this stage that the Deceased does not have any other statutory beneficiaries. When a decedent does not have a surviving spouse, the damages award is distributed to "children of the deceased, or children of any deceased child of the deceased, then to the parents, brothers and sisters of the deceased, and to any other relative who is primarily dependent on the decedent . . . and is also a member of the same household as the decedent." Va. Code Ann. § 8.01-53. Only if the decedent has *no* surviving spouse, children, siblings, parents, or dependent family members, does the award go through intestate succession pursuant to Virginia Code § 64.2-200. *Id.* Thus, Plaintiff has properly demonstrated that she is the sole statutory beneficiary because the

11


Deceased was never married, he had no children nor siblings, his father waived his rights, and he had no other dependent family member who lived in his household.[3]

## IV. CONCLUSION

The Court finds that the VSP is barred from suit by the Eleventh Amendment and will be dismissed from the case. Consequently, Count II will be dismissed in its entirety. Further, Plaintiff's claims against Layton and Bone in their *official* capacity are barred by the Eleventh Amendment and will be dismissed as well. However, the claims against Layton and Bone in their *personal* capacity are not barred by the Eleventh Amendment and will not be dismissed. Finally, the Court finds Plaintiff may bring this action as a *pro se* personal representative because she has demonstrated that she is the sole beneficiary of the Deceased's estate. Thus, Defendants' Motion will be granted in part and denied in part.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Sept 15, 2022
Richmond, Virginia

---

[3] Of course, if it is discovered later that there is another currently unknown statutory beneficiary, Plaintiff may need to obtain counsel to continue the action.