EXHIBIT 19

RFP 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

LATOYA K. BENTON,**Administrator of the**
**Estate of Xzavier D. Hill, Deceased,**

       **Plaintiff,**

**v.**

                                   **Civil Action No. 3:22CV00225-HEH**

**SETH W. LAYTON, individually and in his**
**official capacity as a State Trooper for the**
**Virginia State Police, et al**

       **Defendants.**

### DESIGNATION OF EXPERT WITNESS

COMES NOW Plaintiff, Latoya K. Benton, Administrator of the Estate of Xzavier D. Hill, Deceased and hereby designates Kenneth Miller as her expert witness and states as follows:

1.    Mr. Kenneth Miller is a retained expert.

2.    Mr. Miller has provided as attached herein, a complete written report that contains a complete statement of all opinions to be expressed and the basis and reason therefore;

3.    The facts or data considered in forming his opinion;

4.    His qualifications;

5.    A list of all other cases in which he has testified in the previous four years, and

6.    A statement of the compensation to be paid for his testimony.

7.    Mr. Miller has reserved the right to express additional opinions since discovery is continuing and he may receive additional information.

Respectfully Submitted

LATOYA K. BENTON, Administrator
of the Estate of Xzavier D. Hill, Deceased

By: /s/ Verbena M. Askew
Verbena M. Askew, Esquire
Virginia State Bar #19511
THE VERBENA ASKEW LAW FIRM, P. C.
2 Eaton Street, Suite 708
Hampton, Virginia 23669
Telephone : (757) 722-4100
Facsimile:  (757) 722-1801
vaskewlawfirm@verizon.net
  *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of November 2022, I emailed a copy of the fore-going to:

Robert B. McEntee, III
Assistant Attorney General
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-8198
Facsimile:  (804) 371-2087
rmcenteeiiioag.state.va.us
  *Counsel for Defendants*

_____
Verbena M. Askew

ATAC Alpha Training And Consulting
468 Investors Place Suite 204C
Virginia Beach, Virginia 23452
757-646-4145
atacva@gmail.com
www.atacllc.us

### Expert Report of Kenneth Miller for Plaintiff in the matter of LATOYA BENTON, as Administrator of the Estate of XZAVIER DEYONTE HILL, deceased .v. Trooper Benjamin Bone and Trooper Seth Layton

I'm Kenneth Miller, Owner of Alpha Training And Consulting LLC. I have served in public safety for over 41 years. The breakdown of that service time is as follows, 4 and ½ years serving in the city of Petersburg, 34 years serving as a member of the city of Virginia Beach Police Department and 3 years serving as a member of the city of Virginia Beach Sheriff's Office. During my work as a public servant, I have served in several positions: From November of 2021 until February of 2022, I served as the interim Police Chief in the town of Colonial Beach, VA.

In the city of Petersburg, in July of 2017, I was hired to serve as the Chief of Police. After one year of service, I was asked by the City Manager to remain serving as the Chief of Police and take on the additional role to serve as both Police Chief and the Director of Public Safety. This new position gave me authority over both the Police Department and the Fire Department. The following year the City Manager asked that I change titles and serve as Deputy City Manager of Public Safety. In this new role I served as Police Chief and I was given authority over the city Fire Department, Juvenile services, Adult Pre-trial services, and the city's Veterans Center. After 3 and ½ years in the city of Petersburg, I retired in January 2021. In late January I was asked to come out of retirement and serve the city of Petersburg in a new role as interim City Manager. I agreed to serve until the city could recruit for a new City Manager. In July of 2021 the Council in Petersburg appointed a new City Manager and I was asked to remain on as a consultant.

1

At present I serve as a consultant for the city of Petersburg in the City Manager's Office, conducting background checks, supervising the hiring of employees at the department head level, conducting inquiries, and collaborating with the Police Chief on violence reduction strategies.

While serving in the city of Virginia Beach Police Department, I rose from the position of Police Officer Recruit to the rank of Police Captain. During my service in the city of Virginia Beach Police Department I held several different positions, including Command Duty Captain on the night shift, having full command authority over all four Police Precincts, Special Operations, and the Investigative Division reporting only to the Deputy Chief of Police. As a Lieutenant my responsibilities were to provide leadership over the on-duty Sergeants as well as serve as Commanding Officer in his/her absence. As a SWAT Team Leader (Sergeant), my full-time police duties were to provide training and oversight of the entire SWAT Team to resolve high risk calls for police service, execute high risk search warrants, and to address police calls for service that regular Police Officers and Detectives are not prepared or equipped to handle. As Police Sergeant, I served as a shift supervisor, having direct oversight of the entire shift. As Assistant Coordinator of the Virginia Beach Police Department's Police Academy, I supervised the Academy Training Staff as well as trained Police Recruits. I taught self defense, firearms, academic class and served as a Use of Force Expert. I was also assigned as a Police Academy Instructor, having leadership responsibility over those persons being trained as Police Recruits. Additionally, I served as a Detective, investigating crimes against person cases, and prior I was a Police Officer having an extra duty assignment as a Field Training Officer (FTO).

As a member of the city of Virginia Beach Sheriff's Office I rose from the position of Recruit Deputy Sheriff to the rank of Sergeant, working as a shift supervisor. This position was providing leadership to employees and working in the inmate housing and transportation units.

Prior to this employment I served as a member of the U.S. Marine Corps attaining the rank of Sergeant.

I am an Adjunct Professor teaching "American Law Enforcement" and "Ethics" in the Social Science Department at Virginia State University. I have been an Adjunct Professor at Norfolk State University, Tidewater Community College and Bryant and Stratton College. I received a master's degree from Troy State University in Public Administration, and a Bachelor of Arts Degree in Criminal Justice from St. Leo University.

I have testified as an expert and have been deposed in both state and federal cases. I have listed those cases for which I've given deposition or trial testimony set forth in Attachment A to this Report. I have been a a Virginia Department of Criminal Justice Service certified instructor, additionally having been a firearms Instructor, a licensed boxing coach, and I served as a Department of Defense Instructor for the federal government contractor. I have developed lesson plans and as a contractor I teach leadership and trust building courses throughout the country.

Additionally, I have taught SWAT courses abroad in Saudi Arabia, Taiwan and Australia.

The summary to follow represents a synopsis of my expected opinion for purposes of disclosure requirements. Based on the materials I have reviewed as provided to me by Verbena Askew. As other materials may become available, I reserve the right to amend or supplement my opinions below  In deposition and or at trial, I may elaborate on the substance of and the basis for my opinions set forth in this Report.

My opinions are concluded and will be expressed on a more probable than not basis and based on applicable law enforcement standards. My opinions are based on my education, training, and professional experience.  Discovery in this case is ongoing, and I reserve the right to supplement my opinion if needed after reviewing other applicable documents.

3

**The material I have review thus far includes:**

1. Email the Prosecution decision to hold money as evidence
2. VSP1 pdf BATES 5 pdf
3. Benton production of Evidence (25) documents
4. Phones (30) calls
5. Radio channel (1) (25) calls
6. Radio channel (2) (15) calls
7. 2 VSP 2 Bates
8. 2021-01-09_05.43.48_ch7
9. 20210109 072307 (1)
10. Photos Bates VSP
11. Use of Force Guidelines VSP Bates
12. VSP 1.pdf Bates
13. In car camera video

## Factual Background

This event began on January 9, 2021, at approximately 04:35 AM on Interstate 64 West Bound. Virginia State Troopers Seth W. Layton (training officer) and Trooper Benjamin Bone. The troopers were working out of a marked police vehicle operating radar on interstate 64 westbound at mile marker 177. The video shows several vehicles passing the Trooper's vehicle. A silver Mercedes two door (unknown driver) came through radar at a high rate of speed. The Troopers followed the Mercedes and paced the Mercedes with their marked state police vehicle. They reported that the vehicle was moving at approximately 95 then 96 miles an hour. As the pacing of the silver Mercedes continued and speeds increased the Troopers activated their police vehicle lights and then both siren , and during this pacing the license plate of the Mercedes was radioed in to dispatch. As speeds increased and the lights on the

4

Mercedes were turned off the Troopers initiated the pursuit as they were still westbound on interstate 64. The unknown driver did not stop, the lights were off, the speed slow speed and evasive maneuvers were used. The pursuit concluded with the Mercedes slowing and making a U-turn on interstate 64 and coming to a halt in the soft area of the median strip still on the westbound side but now facing eastbound. The Mercedes was immobilized, and the occupant Xzavier Hill was still in the Mercedes. Both Troopers without haste exited the police vehicle with weapons drawn and pointed at Mr. Hill's vehicle. Both Troopers were shouting commands at him. Mr. Hill responded to one Trooper's commands and extended his hand outside of the Mercedes. Mr. Hill also attempted to explain that his vehicle door doesn't open. Both Troopers continued to shout commands directing Mr. Hill with weapons drawn and pointed at him. During this time, Mr. Hill advise that the door of his vehicle doesn't open, Trooper Layton then gives him a command to stop moving and to put his hands outside the vehicle. Trooper Layton then says stop reaching three times, Trooper Bone says he has a gun, both Troopers say gun, gun, and then shots are fired by both Troopers striking Mr. Hill in the face, hand and back of his neck. Once the shooting ceased Trooper Bone radioed in saying that shots were fired and describes Mr. Hill as a black male 25 years old with a handgun. He requests EMS and other resources to come to the shooting location. Both Troopers spend the next minute and thirty seconds searching for a gun inside Mr. Hill's vehicle They finally locate the gun and then attempt to remove Mr. Hill from his vehicle. Other resources arrive, an internal investigation is launched. A case is developed, an inquiry is conducted, and this event was taken before a grand jury. Both Troopers were cleared of any criminal conduct and the internal investigators deemed the shooting justified.

## Opinions and Basis

Having spent many years in the Virginia Beach Police Department, Petersburg Bureau of Police in patrol and supervisory capacities, I'm very familiar with events that result in the use of force. The work of the law enforcement professional changes with every call and every community contact and by and large those contacts come on the cusp of community

5

members requesting assistance. I question how when that assistance comes from people of color the results and service delivery is catastrophic. In this instance for Troopers to get out of the vehicle and launch a violent unprovoked attack on Mr. Hill resulted in his death for speeding. Reckless driving might warrant a heavy fine and possible jail time, but death leads me to believe the force levied on Mr. Hill was an excessive use of force In addition, the Troopers' conduct was a reckless disregard of their duty to Mr. Hill. Based on all I have been provided to read both Troopers had no reason to approach and shoot Mr. Hill as he displayed no immediate threat at the time of the stop.

In my role as a patrol officer and a supervisor, I know based on my training and experience how to conduct traffic stops, nothing in the documents I have reviewed thus far leads me to believe Mr. Hill's behavior warranted the (excessive)force levied on him by both Troopers. I am amazed that both Troopers exited their vehicles with weapons drawn and pointed, this was recklessly brandished their firearm I believe this to be contrary to police training.

1. Based on my review of the material thus far I must wonder if this is how Virginia State Troopers are trained. They were working on an interstate highway where speeds do increase,. Based on the behaviors of both Troopers are they trained to exit their vehicle for every high speeding violator with weapon/s pointed at them and if they don't get the compliance sought, they shoot them? This is a direct contravention of one the cardinal rules of firearms safety Never point a firearm at anything you are not willing to destroy. Prior to the shooting of Mr. Hill, with the only violation being speeding, now there are questions. What type of traffic is non felony or low risk or felony stop. When a Law Enforcement professional makes a traffic stops typically it has several stages.

   ➢ **The Location** where the stop is conducted, his should be directed by the Officer to protect themselves, the motorist, and the community. Officers don't have to get out and deal with them. Most of the time they can be prodded to a safer location with a simple command delivered via your vehicle's P.A. system.

➤ **The Approach** a professional Law Enforcement Officer a technique to put the motorist at a disadvantage.

➤ **Awareness** The attention needs to be undivided as little as possible.

➤ **Re-approach** should be just as cautious as your initial approach. The re-approach can be just as dangerous as the first.

➤ **Release the motorist a**fter you've conducted all police business, assist them on their way.

2. These five basic steps are a basic framework of a traffic stop. On these stops no weapons are drawn and the steps are followed. On felony stops which are based on behavior, known information and or radio traffic Law Enforcement professional treats the motorist in the vehicle as a barricaded person and does not approach. In this type of case Law Enforcement have their weapons at the ready position and are behind cover. Normally the wheel wells or engine block. There is a scripted protocol, where one officer talks to the motorist and the rest have other assignments. This is done to not confuse the motorist. The Law Enforcement professional talking gives specific commands to the motorist to gain compliance and resolve the event. In the matter I'm not sure what the Troopers were doing for the following reasons.

3. Was this traffic stop (Unknown) or a felony (High Risk) traffic stop or not?

➤ What information did they have on Mr. Hill. They did not know who he was and there was no communication to alert them that he was high risk.

➤ Mr. Hill's vehicle was immobile, and he could not exit.

➤ Why leave safety of cover and approach, both Trooper had firearms out not at the ready but on the target, which was Mr. Hill. There was no indication that Mr. Hill was a dangerous person as no dispatch information, why were their weapons out and pointed at Mr. Hill?

➤ As both Troopers gave shouted commands, it appeared that Mr. Hill was calm, explaining that his vehicle did not open. If Mr. Hill was that much of a threat, why

approach him stuck in his vehicle. With both Troopers shouting commands, it is hard to determine if Mr. Hill was about to be compliant as he did what one Trooper requested but not what the other shouted. With both Troopers shouting and giving commands and without cover they was no indication of real threat assessment. Had they remained behind cover and used a contact cover method and given Mr. Hill a chance to be compliant there likely would have been a better outcome.

4. One must question, whether this was a fair investigation, or was it tainted from the start of the investigation.
- ➤ The early call requesting assistance from another agency, the Virginia State Police Dispatcher Mr. Beasley contacted Goochland County Sheriff's office requesting assistance for the Troopers on interstate 64 as shots were fired at Troopers as they were in pursuit and stopped. The suspect started firing at the troopers. The suspect had a weapon. The other dispatcher on the receiving end asked for clarity and Mr. Beasley repeats the same thing they were in a pursuit and stopped and suspect started firing. 19 202-1437 on channel 7
- ➤ Virginia State Police Dispatch Beasley contacted a First Sergeant Mr. Beasley describes a pursuit took place an explained to the First Sergeant that the suspect in the pursuit got out the vehicle pulled a gun and fired Bone and his trainee fired on the suspect who is DOA. This is on phone call 1920210505 channel 7.
- ➤ Another phone call 19210524 channel 7 the communication between two members of the State Police how the suspect is DRT short for dead right there the question has to be asked is this just a culture of the Virginia State Police.

5. The Virginia State Police has a Use of force policy on page 2 item 2 it addresses time to make a decision Had the Troopers been behind cover they would have allowed themselves time to make a valued decision. The behavior of these two Troopers was not that of professionals. They quickly painted themselves in a corner, and Mr. Hill is dead as a result. This policy also addresses reasonable stops, was it reasonable to

8

approach an unknown suspect with firearms out if the threat was that serious, they should have used tactics and time to gain compliance.

6. In reading the documents I found it odd that Trooper Seth W. Layton (training officer) never saw the gun until after Trooper Bone yelled gun. Then then after the shooting the hoped to find the gun. I'm also confused how Mr. Hill was shot in the jaw and the back of his neck when he was pointing the firearm at Trooper Layton who was to his left.

7. Lastly, I'm very concerned that it took Troopers one and a half minutes to discuss assist Mr. Hill they were laser focused on finding the gin in the car. Trooper Bone who found the gun advised Trooper Layton to remove Mr. Hill and if he yells stop, I'm bothered by that as Mr. Hill might have been alive and no aid was rendered by either Trooper.

## Conclusion

As the video clearly showed (1) Mr. Hill was stuck in his vehicle; (2) Troopers challenged and shouted at Mr. Hill confusing him by giving different commands; (3) the information known to the Troopers was the driver of the Mercedes was speeding; (4) Troopers pointing weapons at him for unknown reasons; (5) did not follow their own use of force policy; and (6) Troopers did not render aid in a timely manner and they appeared to hope to find a gun as they were not sure Mr. Hill had one.

I am astonished this event even happened to Mr. Hill Despite his compliance the shouting and attack was excessive use of force by the Troopers that caused Mr. Hill's death. It is my opinion based on the dynamic and emergent situation that he was faced with the force used by the Troopers for speeding was unreasonable and unnecessary. The tactics used were not the best and the deadly violent attack on Mr. Hill was wrong. I would question the training in the use of force, de-escalation, CIT and life saving by this

9

agency. With respect to using force they left cover, gave poor verbal commands shot and killed Mr. Hill and attempted no life saving tactics.

Having served as a Patrol Officer, a Police Supervisor and Police Chief, I know based on my training and experience, how to identify assaultive behavior, obstruction and resisting arrest. Everything I have reviewed thus far leads me to believe that the force used on Mr. Hill was not warranted, based on the behavior of these two Troopers. The entire event could have been different with better tactics.

I reserve the right to amend, clarify, and enlarge my opinions as may be necessary based on information acquired, including through discovery.

Kenneth A. Miller

468 Investors Place Suite 204C
Virginia Beach, Virginia 23452
757-646-4145
atacva@gmail.com
www.atacva.com



DUN: 113512987
Tax ID 90-0915028

MINORITY, VETERAN OWNED, SMALL BUSINESS

## Kenneth A. Miller

**(1) Relevant present, prior, and part-time employment:**

- ➤ 03/22-Present: Consultant for the City of Petersburg
- ➤ 11-21- 2/22: Interim Police Chief Colonial Beach VA
- ➤ 02/21 – 7/21: Interim City Manager City of Petersburg
- ➤ 08/18 – 01/21: City of Petersburg Public Safety Director (Retired)
- ➤ 02/18 – Present: Virginia State University Adjunct Professor
- ➤ 07/17 – 01/21: Police Chief City of Petersburg Bureau of Police (Retired)
- ➤ 01/16 – 7/17: Captain - Va. Beach Police Department
- ➤ 12/01 - 12/15: Lieutenant - Va. Beach Police Department
- ➤ 10/02 - Present: Consultant Use of Force Instructor
- ➤ 01/08 - 2010: COO/Vice President of HarborSite USANA Training Center
- ➤ 04/02 - 2007: Tidewater Community College - Adjunct Professor
- ➤ 01/04 - 04/04: Norfolk State University - Adjunct Professor
- ➤ 09/03 - 2005: Bryant and Stratton College - Adjunct Professor
- ➤ 01/04 & 05/05: Regent University - Conducted two training classes for journalism students traveling abroad.
- ➤ 12/05 - 12/07: Director of Security Operations US Navy Contractor
- ➤ 03/04 - 12/05: Deputy Director Training Academy US Navy Contractor
- ➤ 10/01 - 03/04: Instructor - Self Defense/Firearms US Navy Contractor
- ➤ 02/96 - 12/01: Sergeant - City of Virginia Beach Police Department
- ➤ 10/97 - 03/02: SWAT Team Leader Va. Beach Police Department.
- ➤ 03/93 - 02/96: Assistant Coordinator Va. Beach Police Department Police Academy
- ➤ 03/86 - 03/93: Detective Va. Beach Police Department
- ➤ 10/83 - 03/86: Patrol Officer (FTO) Va. Beach Police Department
- ➤ 09/80 - 10/83: Sheriff Office – Sergeant Va. Beach Sheriff's Office
- ➤ 09/76 - 09/80: E1 (Private) – E5 (Sergeant) Instructor USMC

**(2) Degrees and relevant special training:**

- ➤ Troy State University, Troy, Alabama - (MPA) 2003
- ➤ St. Leo University, Florida (B.A.) – 2000
- ➤ Legal Issues in Use of Force March 2022
- ➤ ICMA master High Performance Leadership November 2022
- ➤ VALOR Leadership course September 2021
- ➤ IACP Leadership seminar Speaker March 2021

- Virginia State University Leadership seminar August 2020
- FBI LEEDS Session # 78 – August 2019
- FBI LEEDA Law Enforcement Conference May 2019
- FBI National Academy April 4 – June 10, 2016 Session 264
- VA Chief Association New Chief School 2018
- NOBLE Police Chief/CEO Mentoring Course (Cedarville University) 2017
- IACP Leadership in Police Organizations (LPO) January – March 25, 2016
- FBI Law Enforcement Executive Development LEEDA (Sept. 2015) *Continuing Education*
- University of Richmond (Dec. 2014) PELS *Continuing Education*
- Cooper Institute for Aerobics Research, Course taken at Regent University.
- Jackson State University, Jackson, Mississippi *Continuing Education*
- LSU, Baton Rouge, Louisiana 2004 & 2005 *Continuing Education*
- Fair and Impartial Policing (Va. Beach February 2015)
- Hampton University, Building Trust and Legitimacy in Police (July 30, 2015)
- Emergency Management Institute (FEMA) Incident Command levels 100,200,300 & 700 – 2006
- Non-Lethal Weapons Basic Instructor September 2006 – U.S. Government
- Taser training with the City of Va, Beach Police, I was tased in a controlled environment, 2009
- Firearms enhancement training Blackwater N.C. (Handgun, Rifle) 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013,2014,2015
- National Rifle Association Firearms Instructor (Handgun, Shotgun, Rifle) 2005-Present
- Federal Bureau of Investigation, Basic SWAT Training Norfolk, VA.
- Drug Enforcement Administration Training on Meth Labs, Quantico, VA.
- ARI Personal Protection Specialist Training Course
- DCJS Basic Self-Defense Instructor's Course
- DCJS Basic Firearm Instructor's Course
- Executive Protection Instructor
- FBI training Law Enforcement Officers Killed and Assaulted August 2011
- K9 Legal Update Seminar at Va. Beach LETA July 2011
- VCOP Course police involved shootings October 2011
- IACP Police Assessor Training class University Of MD, 2009
- Firearms Instructor for Savior Protection Ministries
- DCJS Firearms Instructor Recertification 2010, 2013
- Police Use of Force training 2012
- Critical Incident Stress Debriefing Training 2012
- Completed the City of Va. Beach Mid-level Managers course March 2012
- Holocaust Leadership visit to the museum in DC March 2013
- Critical Incident Management for Police Executives April 2013
- Leadership training Gettysburg PA. November 2013

**(3) Other Professional activities:**

- Recognized Expert Witness (Federal & State Court)
- Guest lecturer for the FBI National Academy 2017, 2018, 2019
- ASP Baton Instructor
- RAD Instructor
- SAGE Less Lethal Master Instructor
- Department of Defense Baton and Aerosol Instructor (OC Spray)
- DOD NLW Instructor Mechanical Advantage Control Holds (MACH) Instructor

- ➢ Instructor for the Virginia Association of Chiefs of Police and Foundation
- ➢ Developed Workplace Violence training program for Defense Contract Employees
- ➢ Police SWAT Instructor
- ➢ WMD Instructor teaching Tactical Commanders.
- ➢ Former Board Member Mid-Atlantic Tactical Officers Association
- ➢ Virginia State Defensive Tactics Instructor
- ➢ Virginia State Firearms Instructor
- ➢ Virginia State Driving Instructor
- ➢ Virginia, Delaware, Maryland, Florida, New York, Ohio, Pennsylvania and New Jersey Certified Boxing Trainer, Corner man, Coach
- ➢ Past Protection Team Leader for Presidential Candidates, Speaker of the House, U.S. Senator & Congressmen.
- ➢ Instructed - Governor Jim Gilmore's Task Force 4 SAFE School Program
- ➢ Served on Governor Elect Northam's Transition Council on Opioid and Substance Abuse
- ➢ Selected as an Inspector/Use of Force/SWAT training for the Victoria Police Department Melbourne, Australia
- ➢ Conducted SWAT Training for Taiwan's National Police SWAT Team
- ➢ Conducted Tactical training in the (KSA) Saudi Arabia
- ➢ Selected to serve as a member of Police Promotional selection processes for Maryland Park Police, Savannah/Chatham Police Department, Minneapolis Minnesota Police Department, Columbus Ohio Police Department, Birmingham Police Department, Norfolk Va. Police Department, Baltimore Police Department and the Chesapeake Va. Police Department.
- ➢ Served as an SME for the city of Birmingham Alabama Police Department Sergeant and Lieutenant promotional test development.
- ➢ Instructor VCPI 2019
- ➢ Coached Firearms in-service training

## (4) Organizations/awards:

- ➢ Alumni FBI NA State Board Member Vice President
- ➢ Member of the Police Association IACP
- ➢ Member Virginia Chief's Association
- ➢ Member American Disabled Veteran Association
- ➢ Past Advisory Board Member for the Seatack Elementary/Achievable Dream Academy
- ➢ Member NAACP
- ➢ Mid Atlantic Tactical Association Past Board Member
- ➢ Member Brotherhood of St. Andrews
- ➢ Grace Episcopal Church Past Sr. Warden
- ➢ International Academy of Self Defense Tactics Instructor
- ➢ Past member Va. Beach Police Supervisors Association
- ➢ Served on the City of Va. Beach Inclusion and Diversity Council
- ➢ Served on the Hampton Roads Diversity Inclusion Consortium
- ➢ Received the Seatack Civic League Medallion
- ➢ Received the Va. Beach Public Service Medal
- ➢ Member Mt Nebo Masonic Lodge # 43
- ➢ Member Hampton Roads Black Caucus

## (5) Publications written or location that contains my ads:

- ➤ www.atacva.com
- ➤ linkedIn
- ➤ Twitter Atac
- ➤ Twitter Chief Petersburg Bureau Of Police
- ➤ Developed a workplace violence lesson plan for defense contractor's company
- ➤ Wrote article for the Major City Chief's Community Engagement Sub-Committee

## (6) Usual and customary fee:

The hourly rate is $190.00 Per hour, to include a review of materials, phone calls, conferences, meetings with the client and or his/her representative, report preparation and submission, plus expenses. Hours are recorded at a minimum of a quarter hour.

If required I am required to travel more than 80 miles from my office, the client is responsible for lodging, meals ($35.00 a day), airfare or ground travel at a rate of $ .53.4 cents per mile plus expenses. The hourly rate is $190.00 per hour (4-hour Minimum) for court/deposition, plus expenses. A $1250.00 non-refunded retainer fee is required.

## (7) Areas of Expertise and Experience:

*Note - Letter codes used in front of the subject mean:*
[ T ] Testified in court or at depositions on the subject.
[ R ] Retained as a consultant, but have not testified on the subject.
[ Q ] Qualified to testify or consult on the subject.

[T] Agency policies, practices, and customs
[T] Batons, flashlights and other impact weapons
[T] Chemical irritants
[T] Corrections
[T] Deadly force; shooting avoidance and alternatives
[T] Demonstrations, Civil Protest and Crowd Control
[Q] Freedom of Information/release of police reports to public
[T] In-custody inmate/prisoner suicides (and prevention methods)
[T] Insufficient or inadequate training
[T] Less Lethal Force
[T] Police OC Spray
[T] Police firearms discharge (shootings)
[Q] Negligent entrustment of a weapon to an employee
[T] Police use of Tasers
[Q] Physical Fitness Standards and Training
[T] Positional restraint asphyxia
[T] Security Officers/procedures / Use of Force
[Q] Police/Law Enforcement Leadership
[Q] Critical Incidents
[T] Prisoner transport, restraints, handcuffing and hog-tying
[T] Retention of a known unfit employee
[Q] Search and Seizure
[T] Search Warrant service
[T] SWAT techniques, hostage & barricade situations

[Q] Use/protection of confidential informants
[T] Vehicle pursuit & emergency response policies & techniques
[T] Photo/Lineup procedures
[T] Workplace violence
[T] Correctional Officers Procedures

## (8) Cases for which I have been hired, or deposed, or offered opinions or testified:

Family of Mr. XZAVIER DEYONTE HILL and Plaintiff's Attorney representing the family contacted and retained my service in a case against Troopers Benjamin Bone and Trooper Seth Layton. November 2022 Pending.

Ruth Ann Warner and Johnathan James Brewster Warner v. Centra Health, Retained by Defendant's Attorney reference firearms discharge. November 2021 Concluded 2022 **REPORT**

Father of Donavon Lynch v. City of Va. Beach: Interest from the Plaintiff's Attorney in a wrongful death of his son. June 2021 **September 2022 REPORT**

Shawn Curran v. Axon Enterprise, INC.: Retained by Plaintiff's Attorney reference a use of a TASER causing damage to the Plaintiff. October 2019 Pending

Denton v. Kimmico: Retained by the Defense Attorney reference a disturbance by the plaintiff at a Nightclub/Sports Bar. Outcome is pending July 2019

Brown v. Cobb: Retained by Plaintiff's Attorney reference a shooting done by the Defendant's employee resulting in the death of the Plaintiff's son. Matter concluded August 2019. **DEPOSED / REPORT**

John Trent v. Austin L. Darnell: Retained by the Plaintiff's Attorney involving an arrest and treatment by Police. Outcome is pending. **REPORT**

Grant V Dyment Matthew: Retained by the Plaintiff's Attorney involving an arrest and treatment by Police during a **civil demonstration** Concluded December 2018 **REPORT**

Smith v. Sergeant Marvin Alexander and Sheriff Robert Hawkins: Retained by the Plaintiff's Attorney to review material in a case involving use of force. Concluded 2018. **REPORT**

Deshawn Barks v Commonwealth of Virginia: Correctional Officer Belton and Culbertson treatment of an in-custody detainee. Retained by the Plaintiff's Attorney. Outcome is pending. **REPORT**

India Kager v. City of Virginia Beach: Selected to serve as Use of Force advisor for the Defendant's Team. April 2017. Matter concluded July 2018

Thomas v Jason Cannon: Brian Markert; Ryan Micenko; Michael Wiley; Michael Zaro: City of Fife; City of Lakewood: and Pierce County METRO SWAT Team: Retained by Plaintiff's Attorney reference a death. Concluded July 2017. **DEPOSED / REPORT**

Guillory v City of Maricopa: Request made by Plaintiff's Attorney to review material in a case involving a death. **After the review, I did not support the pursuit of this matter.** Concluded March 2017.

Tara v. Brent Frank: Retained by Plaintiff's Attorney reference injuries sustained by the Plaintiff. Matter concluded April 2016. **REPORT**

Gibbons v. State of New Jersey: Request made by Plaintiff's Attorney to review material in a case involving a death. June 2016. **After the review, I did not support the pursuit of this matter.**

Erik A. Williams M.D. v. William C. Oliver and Chad E. Ramsey: Retained by Plaintiff's Attorney reference an injury sustained to the Plaintiff that occurred as a result of force levied against him by the defendants. Matter concluded February 2017. **REPORT**

Darren Chisolm v. Dragonfly Restaurant: Retained by Plaintiff's Attorney reference an injury sustained to the Plaintiff that occurred at a Restaurant. Matter concluded March 2017. **DEPOSED**

Cooper V Tucker: Retained by Plaintiff's Attorney reference a death. Matter concluded November 2016. **DEPOSED / REPORT**

State of New Jersey v. Paul N. Robinson: Retained by Defense attorney to offer an expert opinion (report) on the force used on Mr. Robinson. (Police dog bite). Matter concluded 2015. **REPORT**

Owen McClave v 2461 Corporation DBA MADAM'S ORGAN: Retained by Plaintiff's Attorney reference an injury sustained to the Plaintiff that occurred at a nightclub. Outcome is pending. **DEPOSED**
Anthony Davis v. Scott A. Mounger and the City of Newport News: Retained by Plaintiff's Attorney reference a false arrest to the Plaintiff. Outcome is pending.

Jones v. WMATA: Retained by Plaintiff's Attorney reference an injury to the Plaintiff. Case concluded April 2014. **DEPOSED / REPORT**

Ross v. Northern State Prison: Retained by Plaintiff's Attorney reference an in-custody death to the Plaintiff's family member. Case concluded April 2014. **DEPOSED / REPORT**

Adams v. City of Hampton: Retained by Plaintiff's Attorney reference an in-custody death to the Plaintiff's family member. Case concluded March 2014. **DEPOSED / REPORT**

Hawkins v. Tyler Holding: Retained by Plaintiff's Attorney reference an injury to the Plaintiff. Outcome is pending.

Ortega v. City of Atlantic City: Retained by Plaintiff's Attorney reference the use of force I have been retained by the Plaintiff's Attorney reference an injury sustained to the Plaintiff that occurred at a nightclub. (Dog bite) Additionally to review the defendant's training and the standard of customer care. Case concluded April 2014. **REPORT**

Marley v. Gibbs: Retained by Plaintiff's Attorney plaintiff's reference the use of force levied against her. Additionally, to review the defendant's training and the standard of customer care. Outcome is pending. **REPORT**

Williams v. Euro Enterprise: Retained by Plaintiff's Attorney reference an injury to the Plaintiff. Case concluded April 2013 **REPORT**

Johnson v. Overstreet, Overstreet, Burley and National Security: Retained by Plaintiff's Attorney to offer my opinion as to the use force. Case concluded in December 2011 **DEPOSED / REPORT**

Damola Adamolekun v Fur Nightclub: Retained by Plaintiff's Attorney to offer my opinion in an excesses force case by the Defendant's employees. Case concluded 2012 **DEPOSED / REPORT**

Denyakin v Stephen D. Rankin & City of Portsmouth: Retained by Plaintiff's Attorney to offer my opinion as to the use of a firearm in a Police involved shooting. Case concluded in May 2012. **DEPOSED**

Cooper v Gaskill: Retained by Plaintiff's Attorney to serve as an expert with a focus as the use of a Taser, by a North Carolina Deputy Sheriff. Case concluded in May 2011. **REPORT**

Mary Beard Patterson V Michael B. Eagle, Michael A. Huntsman, Chad T. Davis, Timothy C. Clements, Jerry R. Mayberry, Thomas B. Lawton, Christopher S. Bradner, and John Does in the city of Lynchburg Circuit Court: Retained by Plaintiff's Attorney and contracted to offer an opinion as to the use of police force which resulted in a death. Case concluded in December 2010. **REPORT**

De'Ontra Johnson v. Sean M. Broomell, an employee in the County of Henrico: Retained by Defense to review the use of force discharged by the officer. Case concluded in December 2010. **DEPOSED / REPORT**

Linda Suggs v. City of Norfolk: Retained by Plaintiff's Attorney to review documents and video from a Police in-car camera and offer an opinion as to the police use of force. Case concluded in November 2010 **REPORT**

Anderson v. Payne: Retained by Plaintiff's Attorney, assault case, before the State Court for the County Fairfax Va., reference to police use of force. Case concluded in August 2010. **REPORT**

Rodney M. Morton v. Fredericksburg Police Department: Retained by Plaintiff's Attorney to offer my opinion as an expert reference to policies/arrest procedures Case concluded in 2010. **REPORT**

Kirby Johnson v. City of Hampton Police Department: Retained by Plaintiff's Attorney to offer my opinion as an expert on police policies. Case concluded in 2010. **DEPOSED / REPORT**

Pamela Brown v. Officer Parks: Retained by Defense to offer my opinion as to the use of a Taser. Case concluded in 2009. **DEPOSED / REPORT**

Barkley v. City of Newport News: Retained by Defense to offer my opinion as to the use of a firearm in a Police involved shooting. Case concluded in 2009. **DEPOSED / REPORT**

Essam F. Nazif V. IPC International Corp & Michael Cagni (Deputy Sheriff Norfolk VA.): Retained by Defense as an expert Use of Force case. Case concluded at summary judgment 2008. **REPORT**

Carla Daniels V. City of Farmville 2007: Retained by Plaintiff's Attorney. The focus was use of the SWAT Team for the execution of a search warrant, in which the Plaintiff was injured. Case was resolved. **REPORT**

Family of Raymond Gary v. VA. Regional Security Company, Joseph Sippio, Troy Leinhart: Retained by Plaintiff's Attorney as an expert in a Firearms discharge matter. Case concluded 2007. **DEPOSED**

Charles W. Rosen v. City of Va. Beach & the Chief of Police: I was designated as an expert for the defendants, 2006 case was disposed of.

Daemeon Gray v. Richmond Community Hospital & the County of Henrico: Retained by Defense (County) to offer my opinion as to the Use of force focusing on officers taking Mr. Gray to the ground. Case was concluded 2006. **DEPOSED**

Family of Raymond Chandler v Smith, Hertsfelt, City of Norfolk: Retained by Defense to offer my opinion as to the use of OC Spray, positional asphyxia in a case 2003-2004, Case taken to an arbitrator. Case concluded in 2004. **TESTIFIED**

Reedy v. City of Hampton Federal Court Case: Retained by Defense to offer my opinion as to the use of a firearm in a Police involved shooting. Case concluded 2002. **DEPOSED**

Commonwealth v. Rosen, Circuit Court City of Norfolk: Requested by the Norfolk City Attorney's Office to testify against the defendant in the use of a flashlight in the application of Force. 2001 case concluded. **TESTIFIED**

US. v. Anthony Philpotts Federal Court in the city of Norfolk: The focus was use of the SWAT Team to serve a search warrant, and was its use appropriate? Case was concluded in 2001. **TESTIFIED**

US v. Curtis Philpotts Federal Court in the city of Norfolk: The focus was use of the SWAT Team to serve a search warrant, and was its use appropriate? Case was concluded in 2001. **TESTIFIED**

Comeau v. The City of Va. Beach & R.J. Smith: This was a firearms discharge case and I was the expert for the Defense. Case was concluded in 2000. **DEPOSED**

US v. Eric Dunmire Federal Court in the city of Norfolk: The focus was use of the SWAT Team to serve a search warrant, and was its use appropriate? Case concluded 2000. **TESTIFIED**

Commonwealth v. Brice City of Va. Beach Circuit Court: The focus was use of the SWAT Team to serve a search warrant, and was its use appropriate? Case concluded 1998. **TESTIFIED**

Served as an Expert Witness for the Bureau of Alcohol, Tobacco and Firearms in Federal project exile cases. Case concluded 1998. **TESTIFIED**

Served as an Expert for the Virginia State Police in a personnel hearing where a State Trooper used excessive force off duty. Case concluded 1997. **TESTIFIED**