# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| LaToya K. Benton, Administrator of the Estate of Xzavier D. Hill, Deceased, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 3:22-cv-225-HEH<br>) |
| Seth W. Layton, *et al.* | )<br>) |
| Defendants. | )<br>)<br>) |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, Virginia State Troopers Seth W. Layton and Benjamin I. Bone (collectively, the "Troopers"), by counsel, submit the following as their reply brief in support of their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

## PRELIMINARY STATEMENT

Lacking any record evidence to support an excessive force claim, Plaintiff's response to the Troopers' Motion for Summary Judgment resorts to a scattershot approach, firing off a variety of conspiracy theories and conclusory allegations that lack any materiality to the claims presented to this Court. First, Plaintiff baldly claims, without evidence, that the Troopers lied in all of their sworn statements about seeing a gun in Hill's hands. ECF No. 46 at 1. Not only is this claim unsupported, it is belied by the dash cam video showing that the Troopers yelled "GUN" simultaneously when Hill brandished it. Then, Plaintiff asserts that the Multi-Jurisdictional Grand Jury convened in Goochland "convicted" Hill because it did not return indictments against the Troopers. *Id.* at 3 ("The whole process was designed and orchestrated to cause the Grand Jury to refuse to indict either Trooper."). Then, Plaintiff cryptically asserts that "the

1

Commonwealth's Attorney never inquired about Trooper Layton's pending excessive force investigation by the City of Richmond Police Department." *Id.* Plaintiff next asserts that, in placing Hill in a modified recovery position to check for vital signs, the Troopers engaged in deliberate spoliation in order to "deprive Plaintiff of access to the evidence it [sic] needed to prove her claim." *Id.* at 27-28. Finally, Plaintiff concludes that the Troopers maliciously applied lethal force because they wanted to "punish [Hill] with a death penalty sentence for traffic offenses." *Id.* at 3. These vague, bizarre, and discursive allegations demonstrate only one thing: that in the course of this litigation, Plaintiff has failed to develop any evidence from which a reasonable jury could conclude the Troopers applied excessive force under *Graham v. Connor*, 490 U.S. 386 (1989).

In contrast, the undisputed facts as set forth in the Troopers' Motion for Summary Judgment overwhelmingly establish that the Troopers' usage of force was objectively reasonable. For the reasons stated below, this Court should enter summary judgment for the Troopers.

## **ARGUMENT**

Plaintiff has wholly failed to carry her burden to dispute the record evidence produced by the Troopers. Fed. R. Civ. P. 56(e)(3) (court may grant summary judgment if party fails to properly address another party's assertion of fact as required by Fed. R. Civ. P 56(c) and motion and supporting materials show movant is entitled to summary judgment); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (nonmovant must respond to properly supported summary judgment motion with significant probative evidence). First, Plaintiff fails to dispute with record evidence that Hill brandished a pistol and pointed it at Trooper Layton's face. Second, even if there was one scintilla of evidence that Hill did not brandish a gun and point it at Trooper Layton

(which there is not), Plaintiff's opposition does not contest that Hill was reaching within the vehicle contrary to clearly audible commands to show his hands; thus, lethal force was already objectively reasonable. Third, Plaintiff fails to identify a single case which would put the Troopers on notice that their conduct would violate any "clearly established" right enjoyed by Hill.

I. **The undisputed facts establish that Hill pointed a gun at Trooper Layton.**

At the precise moment force was applied, the video clearly depicts the tense, uncertain, and rapidly evolving scenario the Troopers faced. Hill, a fleeing felony suspect, had abandoned his brief compliance with commands to show his hands, and against commands to put his hands out of the window, reached down into the vehicle with his right hand. ECF No. 43-1 at 5:02-5:06. Soon thereafter, he also removed his left hand from the outside of the vehicle and reached towards the center console with both hands. *Id.* at 5:06-5:16. Then, the video depicts Hill abruptly sitting up. *Id.* At this point, the tension in the Troopers' voices can be heard climaxing as they both simultaneously announce "GUN!" and fire. *Id.* Only moments later, they find a jammed, bloody handgun underneath Hill's hands and body. *Id.* at 6:48; ECF No. 43-2 ¶ 40; ECF No. 43-6 at 4. The Troopers' statements and observations, made contemporaneously with the intense circumstances in which Hill placed them, are all corroborated by the video, the Troopers' depositions, internal affairs statements, and affidavits. Plaintiff points to no record evidence that disputes either the video or their statements.

Plaintiff twice admits that she cannot demonstrate that Hill did not have a gun in his hand. ECF No. 46 at 14, 27. Facing overwhelming evidence that Hill brandished and pointed a handgun at Trooper Layton, Plaintiff retreats to a fatuous argument that she cannot obtain contrary evidence because the Troopers deliberately "tampered with evidence" by removing

Hill's body from the car. ECF No. 46 at 14, 27. But Plaintiff offers no evidence to dispute the Troopers' reasons for removing Hill from the car, which included separating Hill from the handgun he just pointed at Trooper Layton and placing Hill in a modified recovery position to check for vital signs. ECF No. 43-2 ¶ 41; ECF No. 43-3 ¶ 15; ECF No. 43-4 at 133-37; ECF No. 43-5 at 119:15-23. Plaintiff likewise attempts to state that it was impossible that Hill would point a gun with his right hand, ECF No. 46 at 22, but multiple photographs found on Hill's phone show him displaying a handgun in his right hand. ECF No. 43-24 at 27-28.

Plaintiff's other attempts to create a dispute of material fact fare no better. Specifically, Plaintiff cites (1) perceived minor, immaterial discrepancies between testimony made in the Troopers' depositions and the Troopers' statement of undisputed facts, (2) immaterial documents and witnesses not disclosed in discovery and not present during the incident, and (3) affidavits from Plaintiff and her family claiming that the video produced by VSP is spurious (with no explanation as to why she could not obtain the "true" copy via subpoena). None of these sources, however, create any dispute of material fact.

First, neither Trooper made any deposition testimony that contradicted any of their prior statements, nor has Plaintiff pointed to any contradictory testimony; even if she could, however, it is well-settled that there is no genuine issue of fact when the only issue is which of two conflicting versions of a party's testimony is correct. *See, e.g., Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (citations omitted).

Second, Plaintiff cannot rely on witnesses and documents that would be inadmissible at trial to create a material dispute of fact. *Maryland Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991) (hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment) (citations omitted). In particular, she cites to two

4

internal affairs reports, one from Richmond Police Department ("RPD") (ECF No. 48-16) and one from VSP (ECF No. 48-3). At the outset, both of these reports are inadmissible as unsworn hearsay within hearsay. *See Maryland Highways*. Moreover, neither report is probative of any material issue in this case. The RPD report concerns a 2020 citizen complaint filed against Trooper Layton during his former employment as a Richmond police officer. The citizen alleged Trooper Layton improperly deployed pepper spray while attempting to control a riot. A Richmond Grand Jury declined to indict Trooper Layton for simple assault and the IA report itself exonerated the Trooper of any excessive force violation. ECF No. 48-16 at 3, 21. This complaint is not material to the objective use of force in this case.[1]

As for the VSP IA report regarding this matter that Plaintiff cites, Captain Robert Chappell's report not only does not contradict the Troopers' testimony, it merely describes the video footage which is already a part of this Court's record. *See* Fed. R. Evid. 1002 (the best evidence rule). Plaintiff likewise cites to her purported use-of-force expert Miller's deposition testimony on ballistics, arguing that based on Hill's entry wounds, Hill could not have been in a position to point a gun at either Trooper. ECF No. 46 at 22, 27. But Miller was not offered in this matter as an expert on ballistics nor would he even qualify as an expert on the subject. Indeed, this subject and corresponding opinion were not included in either Miller's expert report or his rebuttal report and therefore cannot be considered part of the record. *See* ECF No. 43-20 (Miller's expert report); Fed. R. Civ. P. 26(a)(2)(B)(i) (stating that an expert's report *must*

---

[1] Plaintiff claims this prior complaint was not disclosed in discovery. *See* ECF No. 46 p. 16 ¶ 2. But Trooper Layton disclosed the complaint in his deposition (and there was no interrogatory requesting such information). Strangely, Plaintiff asserts that the existence of the complaint makes his answer to a request for production untruthful because he did not produce RPD records. ECF No. 46 p. 16. This is a discovery dispute presented to the Court after the close of discovery and therefore improper to consider at this juncture; nevertheless, Trooper Layton possessed no documents responsive to the request for prior complaints. The report indicates it was not completed until December 2021, well over a year after Trooper Layton's employment with RPD ended, and is marked "confidential," indicating it was never disseminated to Trooper Layton. ECF No. 48-16 at 3, 7, 44.

contain "a *complete* statement of *all opinions* the witness will express and the basis and reasons for them") (emphasis added).

Third, confronted with the fact that the incident was captured on dash cam video, Plaintiff bizarrely asserts that the video is somehow not a true video or that the VSP manipulated or altered it in some fashion. ECF No. 48-1 at 3, 47, and 49. But Plaintiff does not provide any specifics other than asserting through affidavits from family members that they viewed a "different" video that "clearly showed Xzavier D. Hill did not have a weapon in his hand." *Id.* Regardless, unbelievable evidence, such as Plaintiff's and her family's affidavits, does not create a genuine fact dispute. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007) (in light of video that clearly contradicted plaintiff's version of high-speed police chase, court should not have adopted plaintiff's version of events); *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (court not required to adopt prisoner's version of incidents that is contradicted by video recordings). And unsupported assertions and allegations, such as Plaintiff's conclusory allegation that VSP's video is spurious, are always insufficient to preclude summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of [Fed R. Civ. P. 56(e)] is not to replace conclusory allegations of the complaint with conclusory allegations of an affidavit.").

II. **Plaintiff does not dispute that Hill ignored commands to stop reaching, and instead reached towards where a gun was found.**

Even if Hill had not pointed a gun at Trooper Layton's face, Plaintiff's opposition fails to address the Troopers' second argument—that, given Hill's actions, lethal force was reasonable even before Hill pointed a gun at Trooper Layton. Fourth Circuit precedent has established that when confronted with a fleeing felony suspect who is actively resisting arrest and ignoring commands to show his hands, a reasonable officer can interpret a suspect's reaching as objectively threatening. *See, e.g., Greenidge v. Ruffin*, 927 F.2d 789 (4th Cir. 1990). Hill fulfilled

6

all these elements here: he initiated a high-speed chase at over 120 mph, made evasive maneuvers and attempted to continue feloniously eluding by u-turning into oncoming traffic lanes. Hill was endangering his life, the lives of the troopers, and the lives of the public, increasing any reasonable trooper's perception of danger. *See, e.g.,* Trooper Bone Dep. Tr., ECF No. 43-5 at 82, 86 (identifying Hill's actions as inherently dangerous prior to exiting his vehicle). Hill never submitted to the Troopers' commands to surrender: after attempting to unstuck his vehicle, failing to do so, and holding his hands up for a brief moment, Hill ignored repeated, clear commands to show his hands and instead reached with his whole body towards the center of his vehicle where his hands were not visible to police. No Fourth Circuit case has ever held that under similar circumstances, a law enforcement officer is unjustified in deploying lethal force. The dash cam video footage demonstrates the foregoing facts clearly and indisputably.

Plaintiff's opposition relies on one small portion of the encounter and argues that Hill was in compliance with the Troopers' orders because his hands were visible inside his vehicle for a very brief period of time. *See, e.g.,* ECF No. 46 at 24. But the video also shows Hill abandoning this "compliance" almost immediately by placing his left hand out of the window while reaching with his right, and then reaching with both hands, all while Troopers were demanding to see his hands. ECF No. 43-1 at 5:00-5:16. Plaintiff would halt this Court's analysis of the circumstances at the exceedingly brief moment in time when Hill's hands were visible. But this Court must look at the *totality* of the circumstances presented to the Troopers, not just those circumstances that, in a limited lens, are convenient to Plaintiff's case. *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). Under the totality of circumstances presented to the Troopers, their perception that their lives were in danger was objectively reasonable.

### III. The Troopers are entitled to qualified immunity because Plaintiff fails to identify any clearly established law that could inform the Troopers that their conduct was unconstitutional.

As anticipated, Plaintiff's excessive force claim does not rest on any clearly established law or case involving similar circumstances to those presented in this case; instead, Plaintiff points towards personal interpretations of police procedure and a recently passed law that did not take effect until March 1, 2021, months after Hill's death. ECF No. 46 at 25-26; Va. Code § 19.2-83.5 (effective March 1, 2021, pursuant to Va. Const. Art. IV, § 13). But Plaintiff's opinion as to "best" police procedures employed prior to the usage of lethal force is irrelevant under the *Graham* factors. *See, e.g., Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996) ("This suggestion that the officers might have responded differently is exactly the type of judicial second look that the case law prohibits."); *see also Anderson v. Russell*, 247 F.3d 125, 132 (4th Cir. 2001) (rejecting the assertion that a material factual dispute existed simply because the appellant argued that the officer should have taken cover instead of firing his weapon).

Regardless, Plaintiff's proffered Virginia Code section does not state that while looking down the barrel of a firearm, the police must de-escalate, take cover, wait for backup, or wait at all. Va. Code § 19.2-83.5. In fact, the Code recognizes that an officer, as was the case here, may have had a limited "amount of time available . . . to make a decision," particularly where the suspect "possessed or appeared to possess a deadly weapon." *Id.* at (B)(2)(i)-(ii). The Troopers did not violate Virginia Code § 19.2-83.5; even if they had, such a violation would not amount to a violation of Hill's Fourth Amendment rights. And where the Plaintiff rests her case on interpretation of state law not even in effect at the time force was applied, this Court can simply proceed to the "clearly established" prong of the qualified immunity analysis, because as the Supreme Court of the United States has instructed, "[a] constitutional decision resting on

uncertain interpretation of state law is . . . of doubtful precedential importance." *Pearson v. Callahan*, 555 U.S. 223, 238 (2009) (observing that clarifying the law for the future "is not meaningfully advanced when the definition of constitutional rights depends on a federal court's uncertain assumptions about state law.") (citations and internal quotations omitted).

Plaintiff fails to identify even one similar case that would put the Troopers on notice that their conduct was unconstitutional. Instead, she simply argues that there are no specificity requirements with regards to prior case law, and that the Troopers' actions were prima facie unlawful. *See* ECF No. 46 at 25-26. But the Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (citation omitted). "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citations and internal quotations omitted). "Such specificity is especially important in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* (citation and internal quotations omitted).

In this case, there is no well-defined rule that would put the Troopers on notice that their conduct was unlawful; in fact, quite the opposite: the Fourth Circuit is replete with cases that have factual scenarios closely resembling those presented in this case. *See, e.g., Elliott*, 99. F.3d at 640; *Anderson*, 247 F.3d at 125; *Slattery v. Rizzo*, 939 F.2d 213 (4th Cir. 1991); *Greenidge v. Ruffin*, 927 F.2d 789 (4th Cir. 1991); *Sigman v. Town of Chapel Hill*, 161 F.3d 782, 788 (4th Cir. 1998); *Njang v. Montgomery Cnty.*, 279 Fed. Appx. 209 (4th Cir. 2008). If this precedent has "clearly established" anything, it is this: applying lethal force is objectively reasonable both

when a suspect points a gun at police and when a fleeing felony suspect ignores lawful commands to show his hands and reaches. Accordingly, the Troopers are entitled to qualified immunity.

## **CONCLUSION**

Plaintiff doubts the clear facts presented on the dash cam video footage and presented by the Troopers' statements. But to preclude summary judgment, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Plaintiff is required to point to some evidentiary support on the record, admissible at trial, that would, at the very least, create a question of material fact for the jury. Plaintiff has failed to do so, presenting only unfounded conspiracy theories to the Court. Given that Plaintiff has failed to assemble any record whatsoever, no reasonable jury could return a verdict against the Troopers. This Court should therefore enter summary judgment in favor of the Troopers, dismiss this action with prejudice, and award them any other such relief the Court deems necessary and appropriate.

Respectfully submitted,

TROOPER SETH W. LAYTON
TROOPER BENJAMIN I. BONE


By: */s/ Robert B. McEntee, III*
      Counsel


Jason S. Miyares
Attorney General of Virginia

Steven G. Popps
Deputy Attorney General

Jacqueline C. Hedblom
Senior Assistant Attorney General/
Trial Section Chief

Robert B. McEntee, III (VSB No. 89390)*
Calvin C. Brown (VSB No. 93192)*
Assistant Attorneys General
Office of the Attorney General
202 North 9th Street
Richmond, VA 23219
Telephone: 804-786-8198 (McEntee)
Telephone: 804-786-4933(Brown)
Facsimile: 804-371-2087
rmcenteeiii@oag.state.va.us
cbrown@oag.state.va.us
*Counsel for the Defendants

# CERTIFCATE OF SERVICE

I hereby certify that on February 27, 2023 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Robert B. McEntee*
Robert B. McEntee, III (VSB No. 89390)
Assistant Attorney General
Office of the Attorney General
202 North 9th Street
Richmond, VA 23219