UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| LaToya K. Benton, Administrator of the Estate of Xzavier D. Hill, Deceased, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 3:22-cv-225-HEH ) |
| Seth W. Layton, *et al.* | ) ) ) |
| Defendants. | ) ) |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY

The Defendants, Virginia State Troopers Seth W. Layton and Benjamin I. Bone (the "Troopers") by counsel, hereby submit their memorandum of law in support of their motion to exclude Kenneth Miller's expert testimony. They state the following:

## BACKGROUND AND INTRODUCTION

Plaintiff LaToya K. Benton, Administrator of the Estate of Xzavier D. Hill, Deceased ("Plaintiff"), filed a Designation of Expert Witness on November 28, 2022 identifying Mr. Kenneth Miller ("Miller") as a "retained expert." Attached hereto as **Exhibit A**, the Designation incorporates a ten-page "Expert Report" ("Report") authored by Miller and attached hereto as **Exhibit B**. Plaintiff additionally submitted a rebuttal report ("Rebuttal") from Miller in response to a report authored by Defendant's expert, attached hereto as **Exhibit C**. Both his Report and Rebuttal show that Plaintiff offers Miller as an expert in police procedure as applied to traffic stops. Miller is expected to testify that the Troopers' choice of tactics was deficient because they deviated from Miller's preferred police protocols regarding traffic stops.

1

To support his opinions, Miller is expected to rely on his professional experience in law enforcement as well as what he considers the "applicable law enforcement standards,", Ex. B. p. 3, which are three Virginia Beach Police Department General Orders, included within the Report's Appendices and collectively attached hereto as **Exhibit D**. Despite never having performed a traffic stop on a state highway, nor having considered any Virginia State Police ("VSP") traffic stop policies, Miller is expected to testify that how the Troopers performed the traffic stop somehow caused Hill's death. Ex. B at 10 (under "Conclusion," Miller opines that "[t]he entire event could have been different with better tactics."); Ex. C p. 6 (under "Conclusion, he opines that "[b]oth Troopers placed themselves in great jeopardy by standing in the open and close to Mr. Hill's vehicle. Disregarding their own safety and leaving absolutely no room for error and forcing the deadly event.").

Miller is additionally expected to testify concerning a variety of areas outside the scope of his purported expertise on police traffic stop procedure, including, *inter alia*, questioning the integrity of VSP's investigation into the shooting, Ex. B p. 8, ¶ 4, questioning whether the Troopers' choice of tactics was motivated by racial animus, Ex. B pp. 5-6, offering legal conclusions, Ex. B pp. 6, 9 and Ex. C p. 5 (stating on multiple occasions that Hill was merely "speeding" and describing the Troopers as applying "excessive force" on Hill), questioning whether the Troopers ever saw Hill's gun, Ex. B p. 9 and Ex. C. p. 6 (stating that he is "convinced" that "Trooper Layton saw the gun," but less than "fully"), testimony on ballistics and crime scene forensics, Miller Dep. Tr., Ex. E. pp. 197-99, and his opinions on Hill's feelings, thoughts, and actions during his interactions with the Troopers. *See, e.g.,* Ex. C p. 5, ¶ 3 (stating, without any factual basis, that Hill could not show his hands because he "had to use one or both of his hands to hold on [sic] the something . . . to right himself . . .").

Miller's opinions are inadmissible for the following reasons: (1) his opinions are irrelevant, (2) he does not describe the bases of his opinions in violation of Rule 26, (3) his opinions are unreliable, (4) he offers inadmissible legal conclusions, (5) his opinions invade the province of the jury, and (6) his expected ballistics/forensics testimony was undisclosed in discovery and is outside the scope of his expertise.

## **LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Under Rule 702, a witness may be qualified as an expert by knowledge, skill, experience, training, or education. Fed. R. Evid. 702. A witness's qualifications to render an expert opinion are "liberally judged by Rule 702. Inasmuch as the rule uses the disjunctive, a person may qualify to render expert testimony in any one of the five ways listed: knowledge, skill, experience, training, or education." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). An expert qualified by experience may testify in the form of opinion if his or her experiential knowledge will help the trier of fact to understand evidence or determine a fact in issue, as long as the testimony is based on sufficient data, is the product of reliable principles, and the expert has reliably applied the principles to the facts of the case. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1999). But Rule 702 "does not require the admission of all proffered expert testimony; the district judge has broad discretion to decide whether such testimony ought to be admitted as helpful to the jury." *United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 323-24 (4th Cir. 1982) (collecting citations). Indeed, under Rule 403, the Court may exclude expert testimony "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" *Minn. Lawyers*

*Mut. Ins. Co. v. Batzli*, No. 3:09-cv-432, 2010 U.S. Dist. LEXIS 14487, at *4 (E.D. Va. Feb. 19, 2010).

"Although the Fourth Circuit has no blanket rule regarding the admissibility of expert testimony in excessive force cases, *Kopf v. Skyrm*, 993 F.2d 374, 378 (4th Cir. 1993), and ultimate issue testimony alone does not mandate exclusion, *id.* at 379, expert testimony that provides little information besides how the verdict should read is generally unhelpful and may be excluded." *Porter v. Prince George's Cnty.*, Maryland, No. 8:06-cv-01964-DKC, 2007 U.S. Dist. LEXIS 107013, *7 (D. Md. Sept. 12, 2007) (citing *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002).

## ARGUMENT

### I. MILLER'S OPINIONS ARE IRRELEVANT UNDER THE EXCESSIVE FORCE ANALYSIS

At the outset, Miller's expert opinions are wholly irrelevant under the excessive force analysis because they examine only police tactics leading up to and after the use of lethal force. Miller offers not a single standard police practice, policy, or training material stating that an officer should not shoot when suspect raises a gun and points it at officer, just opinions about tactics leading up to it and after. Instead, Miller opines only on law enforcement traffic stop procedure. Ex. B pp. 5-8. He then asserts that the Troopers deviated from what he considers standard traffic stops procedures, and that, by choosing inferior tactics, created a situation requiring deadly force. *See, e.g.,* Ex. C p. 6 (asserting that the Troopers were "forcing the deadly event" by "standing in the open and close to Mr. Hill's vehicle."). He offers no opinions that would qualify him as an expert in the usage of force; the fact that he has law enforcement experience and offers opinions as to traffic stops "does not *ipso facto* qualify him to testify as an expert in all related areas." *Andrews v. Woody*, No. 3:17-cv-00167-MHL, 2018 U.S. Dist. LEXIS

4

91593*, at *6 (E.D. Va. May 31, 2018) (citation and internal quotations omitted). *See also Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391 (D. Md. 2001) (finding that an expert who was a mechanical engineer was "not necessarily qualified to testify as an expert on any issue within the vast field of mechanical engineering" and listing numerous cases with similar findings).

Assuming arguendo that Miller's opinions qualify him as a use of force expert, which they do not, law enforcement's choice of tactics prior to the use of force is simply immaterial to the merits of an excessive force claim. *See, e.g., Anderson v. Russell*, 247 F.3d 125, 132 (4th Cir. 2001). Thus, even if approaching a fleeing felony suspect on foot with guns drawn could be interpreted as creating a "dangerous situation," "the reasonableness of the officer's actions in creating the dangerous situation is not relevant to the Fourth Amendment analysis; rather, reasonableness is determined based on the information possessed by the officer at the moment that force is employed." *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005) (citing *Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996); *Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991)); *accord Gandy v. Robey*, 520 Fed. Appx. 134, 142 (4th Cir. 2013) ("A police officer's pre-seizure conduct, regardless of whether it was ill-advised or violative of law enforcement protocol, is generally not relevant for purposes of an excessive force claim under the Fourth Amendment which looks only to the moment force is used."); *Jones v. Allen*, No. 8:15-cv-01173-PX, 2016 WL 9443772, at *5 (D. Md. Oct. 24, 2016) (excluding expert testimony on the alleged unreasonableness of officers' actions leading up to their decision to shoot).

Miller's expected testimony as to the reasonableness of the Troopers' decisions to approach Hill's vehicle with guns drawn will only serve to distract the jury from the issues it needs to consider at trial—namely, the circumstances presented to the Troopers at the precise

5

moment they applied force. His testimony will serve only to "suggest[] that the officers might have responded differently" which "is exactly the type of judicial second look that the case law prohibits." *Elliott*, 99 F.3d at 643. His testimony should, therefore, be excluded in full.

## II. MILLER'S REPORT FAILS TO COMPLY WITH RULE 26

The Court should exclude the testimony of Miller because, in violation of Federal Rule 26, the Report and Rebuttal fail to meaningfully comply with the standards of Fed. R. Civ. P. 26(a)(2)(B). To be qualified under Rule 702, "an experiential expert witness must explain how his or her experience leads to the conclusion reached, why his or her experience is a sufficient basis for the opinion, and how his or her experience is reliably applied to the facts." *Andrews*, 2018 U.S. Dist. LEXIS at *6 (quoting *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007)) (cleaned up).

Miller begins his "Opinions" section by stating that he bases his opinions on his "many years in the Virginia Beach Police Department, Petersburg Bureau of Police in patrol and supervisory capacities" and for this reason, he "know[s] based on [his] training and experience how to conduct traffic stops . . ." Ex. B pp. 5-6. Based on that knowledge, he provides the following conclusory opinions:

(1) "Reckless driving might warrant a heavy fine and possible jail time, but death leads me to believe the force levied on Mr. Hill was an excessive use of force." Ex. B p. 6.

(2) "I am amazed that both Troopers exited their vehicles with weapons drawn and pointed, this was recklessly brandished [sic] their firearm [sic] I believe this to be contrary to police training." *Id.* p. 8.

(3) "Had they remained behind cover and used a contact cover method and given Mr. Hill a chance to be compliant there likely would have been a better outcome." *Id.*

6

(4) "[W]as it reasonable to approach an unknown suspect with firearms out? If the threat was that serious they should have used tactics and time to gain compliance." *Id.* pp.8-9.

(5) "In reading the documents I found it odd that Trooper Seth W. Layton (training officer) never saw the gun until after Trooper Bone yelled gun. Then after the shooting the [sic] hoped to find the gun." *Id.* p. 9.

(6) "I'm also confused how Mr. Hill was shot in the jaw and the back of his neck when he was pointing the firearm at Trooper Layton who was to his left." *Id.*

(7) "Lastly I'm concerned that it took Troopers [sic] one and a half minutes to discuss assist [sic] Mr. Hill they were laser focused on finding the gin [sic] in the car. Trooper Bone who found the gun advised Trooper Layton to remove Mr. Hill and if he yells stop, I'm bothered by that as Mr. Hill might have been alive and no aid was rendered by either Trooper." *Id.*

(8) "Mr. Hill was stuck in his vehicle." *Id.*

(9) The "Troopers challenged and shouted at Mr. Hill confusing him by giving different commands." *Id.*

(10) "The information known to the Troopers was the driver of the Mercedes was speeding." *Id.*

(11) "[The] Troopers pointing weapons at him for unknown reasons." *Id.*

(12) "[The Troopers] did not follow their own use of force policy." *Id.*

(13) "[The] Troopers did not render aid in a timely manner and they appeared to hope to find a gun as they were not sure Mr. Hill had one." *Id.*

7

(14) "I am astonished this event even happened to Mr. Hill despite his compliance the shouting and attack was excessive use of force by the Troopers that caused Mr. Hill's death." *Id.*

(15) "It is my opinion based on the dynamic and emergent situation that he was faced with the force used by the Troopers for speeding was unreasonable and unnecessary. The tactics used were not the best and the deadly violent attack on Mr. Hill was wrong." *Id.*

(16) "With respect to using force they left cover, gave poor verbal commands shot and killed Mr. Hill and attempted no life saving tactics." *Id.* at 10.

(17) "Everything I have reviewed thus far leads me to believe that the force used on Mr. Hill was not warranted, based on the behavior of these two Troopers. The entire event could have been different with better tactics." *Id.*

(18) That it was a "challenge" for Hill to "show both hands" because "he had to use one or both of his hands to hold on the something [sic] in the stuck vehicle to right himself . . ." Ex. C p. 5.

(19) "There was nothing in the materials provided that alerted these two Troopers to the fact that Mr. Hill was a danger to them or the community. There was nothing in the documents provided to me that supported anything other than him being a driver who was speeding." *Id.*

(20) "[A]id should have been rendered instead of the two Troopers dragging Mr. Hill out of the vehicle and leaving him on the ground." *Id.* at 6.

(21) "There is nothing new that I have read that I am fully convinced that suggested that Trooper Layton saw the gun." *Id.*

(22) "If the stop required them to draw and point and then shoot their weapons, they could have repositioned their vehicle and used the vehicle as cover and treated Mr. Hill as a barricaded person. This would have afforded them a great tactical advantage." *Id.*

(23) "Because of the actions of the Troopers, the only option was the force they levied." *Id.*

(24) "But for these inappropriate and self created unnecessary circumstances, deadly force would not have been required." *Id.*

Clearly, nearly all of these opinions go beyond the scope of Miller's experience in "traffic stops." Ex. B pp. 5-6. At best, opinions (2), (3), (4), and (10) reference back to Miller's proffered forms of traffic stops, in that the Troopers did not follow what Miller believes is standard police protocol. But he provides no reason for these conclusions beyond offering two traffic stop protocols and asserting that the Troopers deviated from them. Ex. B pp. 5-8. Nor does he provide any basis or explanation for the opinion that approaching a fleeing felony suspect with guns drawn can then "require" "deadly force." *See* opinions (23) and (24) *supra*. In a similar vein, Miller fails to provide any explanation as to how his background would permit him to make conclusions about, for example, the use of force, ballistics or crime scene analysis, the provision of medical aid, or the credibility of fact witnesses, such as Trooper Layton. This outright failure violates the plain language of Fed. R. Civ. P. 26(a)(2)(B) which requires that an expert report contain "a complete statement of all opinions the witness will express and the *basis and reasons for them.*" (emphasis added).[1] Without any basis or reason for the opinions

---

[1] In her response to Defendants' Motion for Summary Judgment, and 17 days after the Troopers filed their reply brief, Plaintiff attached a Declaration from Miller, ECF 50-1 pp. 2-6, which expresses new additional opinions and purported factual determinations beyond those included in his report, plainly violating Rule 26's mandate that expert reports contain a "*complete* statement of *all opinions* the witness

9

expressed therein, Miller's Report is simply one conclusory and baseless allegation that the Troopers used excessive force, which is improper for the jury to consider.

### III. MILLER'S OPINIONS ARE UNRELIABLE

Miller's failure to articulate any "reliable principles or methods" that produced his opinions additionally makes them unreliable and excludable under Rule 702(c) and (d). "In determining whether proffered expert testimony is sufficiently reliable so as to assist the trier of fact, *Daubert* suggests that courts consider several non-dispositive factors: (1) whether the expert's methodology can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and, (4) whether the theory or technique has gained general acceptance within the relevant scientific community." *Andrews*, 2018 U.S. Dist. LEXIS at *7 (citing *Daubert*, 509 U.S. at 593-94). "This analysis applies to all proffered specialized knowledge, not solely scientific expert testimony." *Id.* (citing *Kumho Tire v. Carmichael*, 526 U.S. 137, 141 (1999)).

Each of Miller's opinions fails to "explain how [his] experience leads to the conclusion reached, why his experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Wilson*, 484 F.3d at 274 (alteration in original). Indeed, Miller admits that his opinions are not grounded in any statistical analysis; nor do they guarantee, with any degree of certainty, that the Troopers would not have been "required" to use "deadly force" had they followed his preferred traffic stop protocols. *Compare* Ex. C. p. 6 *with* Miller Dep. Tr., attached as **Exhibit E**, pp. 206-07 (stating that he did not know with any statistical certainty or probability whether adherence to his protocol would have prevented Hill's death). Similarly, Miller stated that an officer's choice of tactics could justify a suspect's forceful response. *Id.* at

---

will express . . ." (emphasis added). Discovery in this matter has long closed and the Court should ignore these novel opinions out of hand.

173. But he could not explain how by exiting their vehicle with weapons drawn, the Troopers "forced the deadly event." *Id.* 176-79. In fact, he admits that the police can deviate from his preferred protocols if the circumstances so warrant, stating that if a suspect stays in his car but is exhibiting signs that he wants to flee, the police may exit their vehicle and engage the suspect "if it's a felony matter . . . but it's not tactically smart." *Id.* at 184. Miller concluded his opinion as to how police can perform traffic stops, stating: "It's up to them. They can do whatever they want." *Id.*

Miller's deposition testimony thus confirms that there is no reliable methodology underlying his conclusions. Rather than stemming from any reliable methodology that can be tested, Miller's opinions appear to derive from flimsy, subjective beliefs; his conclusions are contradictory, contravene logic, and offend basic notions of law and order (e.g., stating that an officer's choice of tactics can justify a suspect's forceful response). "Requiring that an expert's opinions be reliable constitutes a bedrock part of a district court's gatekeeper function under Rule 702." *Andrews*, 2018 U.S. Dist. LEXIS at *11-12 (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendment). This Court should exercise that function and exclude Miller from testifying at trial due to his inability to provide reliable opinions.

IV. **MILLER OFFERS INADMISSIBLE LEGAL CONCLUSIONS**

Miller's Report and Rebuttal both reveal that should he be permitted to testify at trial, he will opine on legal matters within the sole province of the jury and this Honorable Court.

While Rule 704(a) allows the admission of expert testimony that "embraces an ultimate issue to be decided by the trier of fact," "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver*, 286 F.3d 749, 760 (4th Cir. 2002) (citations omitted). The Fourth Circuit has "identif[ied]

11

improper legal conclusions by determining whether the terms used by the witness have a separate, distinct, and specialized meaning in the law different from that present in the vernacular." *Id.* (citations and internal quotations omitted).

Miller's Report and Rebuttal are both riddled with conclusions using specialized legal terms. On three separate occasions, Miller states that the Troopers used "excessive force." Ex. B pp. 6, 9. Similarly, upon viewing the dash cam footage of Hill eluding and evading the Troopers at speeds in excess of 120 MPH, Miller opines on several occasions that Hill was merely "speeding," *see, e.g.* Ex. B pp. 6-9 and Ex. C p. 5-6, a term with significant legal import throughout the Code of Virginia. *See, e.g.,* Va. Code §§ 46.2-862, 46.2-870 *et seq. Cf.* Va. Code § 46.2-817 (disregarding signal by law-enforcement officer to stop). By repeatedly concluding that Hill only committed a speeding infraction, by negative implication, Miller implicitly concludes that Hill was innocent of any other criminal infractions under the Code of Virginia. But Miller contradicted this unbelievable opinion in his deposition testimony, where he admitted that the Troopers had probable cause to arrest Hill for felony eluding under Virginia law. Ex. E p. 180. Nevertheless, should Miller retreat to the incredible legal conclusions in his Report and Rebuttal at trial, he will invade the roles of judge and jury, as it is the judge, not the expert, "whose exclusive province it is to instruct the jury on the law." *Adalman v.Baker, Watts & Co.*, 807 F.2d 359, 367 (4th Cir. 1987). "Evidence supplied by experts as to legal conclusions is not admissible, nor indeed 'evidence' at all." *Safeway, Inc. v. Sugarloaf Partnership, LLC*, 423 F.Supp.2d 531, 539 (D. Md. 2006) (quoting *Nutrition 21 v. United States*, 930 F.2d 867, 871 n. 2 (Fed. Cir. 1991)) (internal quotations omitted). These opinions, therefore, should be excluded from presentation to the jury.

### V. MILLER'S OPINIONS INVADE THE PROVINCE OF THE JURY

Miller's testimony must also be excluded because several of his opinions amount to comparisons and evaluations of evidence, which is solely within the province of the jury. For this reason, his opinions are "unhelpful, irrelevant, and potentially confusing, and thus excludable under Rule 702(a) and Rule 403." *Andrews*, 2018 U.S. Dist. LEXIS at *6.

Rule 702 requires that an admissible expert opinion be based upon "scientific, technical, or other specialized knowledge." By negative implication, "Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." *Scott v. Sears, Roebuck, & Co.*, 780 F.2d 1052, 1055 (4th Cir. 1986). The Fourth Circuit's "common knowledge" rule finds expert testimony unnecessary when reaching the expert's opinion "is something that can sufficiently be done by the jury without help from an expert." *United States v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995). The admission of "common sense" expert testimony is dangerous because "the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense." *Scott*, 780 F.2d at 1055.

Miller's opinions violate this rule by commenting on evidence and offering factual conclusions. For example, in contradiction to the facts depicted by the dash cam video footage, Miller is expected to testify that Trooper Layton never saw Hill's gun before firing. *Compare* Ex. B p. 9 and Ex. C p. 6 *with* ECF 43-1 at 5:15-16 (video evidence in which Trooper Layton audibly yells "GUN!" at the same time he discharges his weapon). *See also* Ex. B p. 9 (stating the Troopers "appeared to hope to find a gun as they were not sure Mr. Hill had one."). Miller's lay opinion is not even well-founded or credible, given that he admitted at his deposition that his

13

opinion did not consider statements from either Trooper indicating that Hill pointed a gun at Trooper Layton. *Compare* Ex. E. p. 173 *with* Trooper Layton Internal Affairs Statement, ECF No. 43-22 p. 4, produced to Plaintiff in Defendant's First Production of Documents on November 2, 2022. *See also* Ex. E. p. 100 (Miller admitting he heard the Troopers yell "gun" on the dash cam video, but that he still did not know why they shot him).

Miller is also expected to speculate that Hill could not comply with orders to show his hands because "he had to use one or both of his hands to hold on [sic] the something in the stuck vehicle to right himself . . ." Ex. C p. 5, ¶ 6. He additionally concludes that Hill was stuck in his vehicle, that the only information known to the Troopers was that Hill was "speeding." Ex. B. p. 9. Finally, Miller is expected to offer various opinions as to Hill's mental state at the time of his interactions with the Troopers. See Ex. B p. 9 (asserting that the Troopers were "confusing" Hill thus explaining his noncompliance with commands to show his hands); Ex. E pp. 169, 202 (stating that Hill was scared and confused because Hill was 18 years old). *Cf. Russell v. Wright*, No. 3:11-CV-00075, 2013 WL 596062, at *3 (W.D. Va. Feb. 15, 2013) ("The very reason why a use of force expert might be helpful to a jury in certain circumstances—to assist their understanding of law enforcement techniques and procedures with which they are unfamiliar— also highlights why that same expert is not appropriate to talk about what an objectively reasonable person in [the decedent's] position would have expected to result from his actions.").

Miller's opinions lack an evidentiary foundation and are contradicted by the overwhelming evidence as outlined in Defendants' Motion for Summary Judgment. Moreover, even if there were a genuine dispute of material fact on the forgoing points, this dispute would be well within the comprehension of a jury. The jurors do not need an expert to tell them what an ordinary person would think of the plain facts. *See Kopf v. Skyrm*, 993 F.2d 374, 377 (4th

Cir.1993) (expert testimony should not be permitted "when the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense").

Finally, "use of force" is a matter that can be comprehended by any ordinary member of the jury and does not require specialized knowledge. *See, e.g.*, *Wallace v. Poulos*, No. 8:08-cv-00251-DKC, 2011 WL 13223693, at *2 (D. Md. Apr. 4, 2011) (excluding a "use of force expert" where the proposed expert offered opinions only as to whether the force used was reasonable, and did not provide specialized knowledge on any police skills). As discussed *supra*, Miller offers only irrelevant opinions regarding protocols for traffic arrests and that the Troopers did not strictly follow them. Ex. B pp. 5-8. But even if Miller had set forth a basis for his qualification as a "use of force expert," Miller offers no opinion on whether the Troopers could reasonably shoot Hill if he raised a gun. For good reason, expert testimony is not needed to help determine whether reasonable officers are justified in shooting a suspect when the suspect raises a gun and points it at them. Under those circumstances, the decision to shoot is governed by common sense. *Minnesota Lawyers Mut. Ins. Co. v. Batzli*, No. 3:09-cv-432, 2010 U.S. Dist. LEXIS 14487, at *4 (E.D. Va. Feb. 19, 2010) ("The Fourth Circuit has also held that where lay jurors are fully able to understand and appreciate the implications of the evidence admitted, proffered expert testimony will not assist the jury in determining a factual issue; and, is therefore inappropriate.") (citing *United States v. Portsmouth Paving Corp.*, 694 F.2d 312 (4th Cir. 1982). Indeed, Miller offers no customary practice that should be followed when a suspect points a gun at an officer's face, and even if he did, it would not be helpful in assisting a jury come to a verdict in this matter.

## VI. MILLER CANNOT OPINE ON BALLISTICS

Neither Miller's Report nor Rebuttal set forth any specialized knowledge in ballistics or crime scene analysis. Nor did they offer opinions on the same. Yet, at Miller's deposition, Plaintiff revealed that she will attempt to use Miller to dispute whether Hill pointed a gun at Trooper Layton, asking Miller questions about Hill's entry wounds and whether they could have been produced given the Troopers' accounts of where they had been standing. Ex. E pp. 197-99.

At the outset, even if Miller possessed expertise in ballistics or crime scene forensics, which he does not, his newfound opinions on ballistics were never disclosed in discovery, and therefore, cannot be used in response to a motion for summary judgment or admitted at trial. *See* Fed. R. Civ. P. 37(c)(1); *Holmes v. Gen. Dynamics Mission Systems, Inc.*, 835 Fed. Appx.688, 691 (4th Cir. 2020) (affirming district court's decision to strike from the summary judgment record a declaration from a witness disclosed after the close of discovery). The only "opinion" regarding ballistics disclosed in Miller's Report is a statement that Miller is "confused how Mr. Hill was shot in the jaw and the back of his neck when he was pointing the firearm at Trooper Layton who was to his left." Ex. B. p. 9, ¶ 6. Miller never disclosed or described how his law enforcement experience in traffic stops led to that confusion; nor can that "confusion" be considered an opinion for the purposes of disclosure in discovery.

Even if Miller could qualify as a ballistics expert, however, Miller's conclusory and bizarre ballistics opinions are inadmissible for many of the reasons already outlined above. First, the mere fact that Miller has shown experience with certain aspects of police procedure, namely traffic stops, does not immediately qualify him as an expert in all facets of police procedure. *See, e.g., Lee v. City of Richmond, Va.*, No. 3:12-cv-471, 2014 U.S. Dist. LEXIS 139366 at *14-17 (E.D. Va. Sept. 30, 2014). In *Lee*, the plaintiff argued that his expert's "experience and training

16

as a firearms instructor" qualified him to offer testimony about ballistics and trajectory analysis. *Id.* at *14. But the proposed expert in that case offered no methodology that could be tested or traced back to any publication or standards within a scientific discipline. *Id.* at *17. In fact, the proposed expert characterized his opinion about one of the shooter's positions during the shooting as a "guesstimate." *Id.* Accordingly, the court found that the proposed expert's "scene reconstruction and analyses of bullet trajectories [were] inadmissible for lack of qualification and as unreliable for lack of methodology." *Id.* at *19-20.

Similarly, Plaintiff attempts to use Miller, someone with only general law enforcement experience, to analyze bullet paths based on entry wounds. Ex. E at 198-99. But Miller provided no basis for his "confusion" as to how Hill's wounds were produced, let alone a basis emanating from specialized knowledge or expertise. *Id.*; Ex. B. p. 9, ¶ 6. Indeed, Miller's CV provides no qualifications or expertise in ballistics or crime scene forensics, Ex. B pp. 12-20, nor did Miller describe or offer any qualifications in either discipline. He never described employing a testable methodology regarding ballistics, nor any publication or standards within the discipline of ballistics which might enable him to opine on bullet paths, making his opinions unreliable and excludable under Rule 702. Without any information which could qualify Miller as an expert on ballistics or crime scene analysis, his opinions as to bullet paths and entry wounds, like those in *Lee*, are blind guesses and cannot be presented to a jury.

## **CONCLUSION**

For the forgoing reasons, Miller's expected testimony will not help the trier of fact understand the evidence or determine any fact in issue. His expected testimony on police traffic stop procedure is irrelevant in an excessive force claim and will only serve to confuse the jury. As to the remainder of his opinions, the deficiencies identified in his Report and deposition

testimony reveal he is wholly unqualified to offer knowledgeable testimony as an expert in any field beyond traffic stops. The Court should therefore exclude Miller from testifying before the jury in this matter in any capacity and should award the Troopers reasonable costs associated with deposing Miller and filing this motion.

                                              Respectfully submitted,

                                              TROOPER SETH W. LAYTON
                                              TROOPER BENJAMIN I. BONE

                                        By: */s/ Robert B. McEntee, III*
                                                    Counsel

Jason S. Miyares
Attorney General of Virginia

Steven G. Popps
Deputy Attorney General

Jacqueline C. Hedblom
Senior Assistant Attorney General/
Trial Section Chief

Robert B. McEntee, III (VSB No. 89390)*
Calvin C. Brown (VSB No. 93192)*
Assistant Attorneys General
Office of the Attorney General
202 North 9th Street
Richmond, VA 23219
Telephone: 804-786-8198 (McEntee)
Telephone: 804-786-4933(Brown)
Facsimile: 804-371-2087
rmcenteeiii@oag.state.va.us
cbrown@oag.state.va.us
*Counsel for the Defendants*

## **CERTIFCATE OF SERVICE**

I hereby certify that on March 20, 2023 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Robert B. McEntee, III*
Robert B. McEntee, III (VSB No. 89390)
Assistant Attorney General
Office of the Attorney General
202 North 9th Street
Richmond, VA 23219
