UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| LaToya K. Benton, Administrator of the Estate of Xzavier D. Hill, Deceased, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 3:22-cv-225-HEH ) |
| Seth W. Layton, *et al.* | ) ) |
| Defendants. | ) ) |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE

The Defendants, Virginia State Troopers Seth W. Layton and Benjamin I. Bone, by counsel, hereby reply to Plaintiff's Memorandum in Opposition to Motion to Strike, ECF No. 57. They state the following:

### PRELIMINARY STATEMENT

Consistent with Plaintiff's ever-moving target of allegations against the Troopers, Plaintiff's expert witness in law enforcement procedure, Kenneth Miller, has presented an ever-evolving "opinion" as to Xzavier Hill's possession of the Smith & Wesson SD40 found in his vehicle. First, in his Report disclosed pursuant to Rule 26(a)(2)(B), Miller offered a total of three sentences pertaining to the firearm in Hill's vehicle. Miller's disclosed opinion was as follows: 1) Trooper Layton did see the gun, but only after Trooper Bone yelled gun, and 2) Hill was pointing the firearm at Trooper Layton, but Miller was "confused how Mr. Hill was shot in the jaw and in the back of his neck" because Trooper Layton "was to his left." ECF No. 50-1 p. 17, ¶ 6.

1

Miller's subsequent Rebuttal Report, disclosed pursuant to the scheduling order in this matter, offered a bizarre variation on his first opinion and stated that, "[t]here is nothing new that I have read that *I am fully convinced* that suggested that Trooper Layton saw the gun." ECF No. 50-1 p. 32 (emphasis added). Miller also added that Trooper Layton "saw Mr. Hill reaching for something, yet for what he didn't know." *Id.* While Miller's Rebuttal Report again stated that he is "convinced" Layton saw the gun, albeit less than "fully," he provided no basis or rationale for this statement. Miller's lack of explanation is understandable given that he later admitted during his deposition that he heard the Troopers yell "gun" at the same time they fired, but that he didn't know why they fired because, in his words, "I wasn't there. I don't know what the troopers saw," "I'm not them," and "I don't know these troopers." ECF No. 57-1 pp. 104:16-106:17.[1]

After the close of discovery, Defendants filed their motion for summary on February 6, 2023. Plaintiff filed her opposition and exhibits on February 21, 2023. Plaintiff's opposition referenced Miller's opinions as Exhibit 5. After being informed by the Court that Exhibit 5 was missing from her ECF filing, and long after both discovery and briefing on Defendants' summary judgment motion were closed, Plaintiff filed a previously undisclosed "opinion" of Miller in the form of a sworn affidavit offering a completely new take on the presence of a firearm. ECF 50-1 pp. 5-6. Contrary to both of his disclosed opinions, this new undisclosed opinion stated that, "I am of the opinion that Xzavier D. Hill did not point a gun at Trooper Seth W. Lawton [sic] at the time he was shot and Killed [sic] by Troopers Layton and Bone. They were not in an immediate threat of life." ECF No. 50-1 p. 5. Not only were these conflicting

---

[1] This is precisely why Miller's opinions that were timely disclosed to the defense are not admissible in summary judgment consideration or at trial. See Br. in Supp. of Defendants' Motion to Exclude Expert Witness. ECF No. 54, pp. 10-17. *See also Sigman v. Town of Chapel Hill*, 161 F.3d, 782, 787-88 (4th Cir. 1998) (ruling that fact testimony from witnesses did not create a dispute of fact when the officers had the best and only vantage point).

purported "opinions" not previously disclosed, they once again lacked any basis or rationale underpinning them. For both of these reasons, Miller's new opinions are inadmissible.

## ARGUMENT

Plaintiff attempts to excuse her failure to disclose the conclusory "opinions" contained in Miller's Declaration by referring to a single question in Miller's Deposition. ECF No. 57 pp. 1-2. Specifically, during the deposition, counsel for Plaintiff improperly, and falsely, asked Miller a leading question which began with the statement that Miller "indicated that [he] did not believe that Mr. Hill pointed a gun at [Trooper Layton]." *Id.* Neither Miller's Report nor Rebuttal asserted that conclusion. *See* ECF No. 50-1 pp. 17, 32. In the very next sentence, and in the same fashion, counsel then improperly and falsely began another leading question, testifying that Trooper Bone "indicated that the weapon was held by Mr. Hill in his right hand above his— above his nose on the right side of his face . . ." *Id.* "That's how he's pointed, straight up next to his face above his nose." Compare *id.* with Trooper Bone Dep. Tr., ECF No. 43-5, pp. 104-106 (indicating that Hill came up from his concealed position within the car with the firearm and initially pointed it upwards, but then leveled it towards Trooper Layton). Defense counsel contemporaneously objected to the form of the question, as it (1) constituted testimony from counsel, (2) improperly characterized the opinions contained in Miller's Report, (3) improperly characterized Trooper Bone's testimony, and (4) was asked outside the scope of the information elicited in direct examination. Fed. R. Evid. 611(b). Miller then answered the question by stating that "I don't know how the wounds that Mr. – the young boy, Mr. Hill, had in his hand and on the left side of his face . . . I would have thought I was have saw (sic) an autopsy report where it was more frontal wounds." ECF No. 57 p. 2.

But even if asking this question were proper, Rule 26 does not permit supplementation of an expert report by simply asking a question on cross-examination during a deposition. *See* Fed. R. Civ. P. 26(a)(2)(B) (an expert report must contain a complete statement of all opinions the witness will express and the basis and reasons for them). Rule 26 specifically contemplates that if new information is elicited during deposition testimony that could be used at trial, the expert must supplement his report because a "party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2). If a party learns that its expert report is incomplete, it *must* supplement under Rule 26(e)(2) because "the expert report should be written in a manner that reflects the testimony the expert witness is expected to give at trial." *Campbell v. United States*, 470 F. App'x 153, 157 (4th Cir. 2012) (quoting *Sharpe v. United States*, 230 F.R.D. 452, 462 (E.D. Va. 2005)). And a party cannot simply "supplement" an expert report with new opinions after the close of discovery, because "to construe Rule 26(e) supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert preparation." *Id.* (alterations removed). The same applies here, where Plaintiff offers a new expert "opinion" contradicting a previously disclosed opinion solely in response to a motion for summary judgment.

Plaintiff then attempts to argue that Miller "provided this same opinion in his initial report." ECF No. 57 p. 2. First, this is not true. Miller did not provide the new opinion at issue here in his report; in fact, the new opinion conflicts with both his reported opinions. Second, Plaintiff is "not simply attempting to add additional or corrective information, which would trigger her duty to supplement under Rule 26(e)(1)." *Sharpe*, 230 F.R.D. at 462. Rather, by filing a new expert opinion beyond those expressed in Miller's Report and after the close of discovery,

Plaintiff "is requesting additional time for [Miller] to recast and rework [his] initial opinions so as to comply with the requirements of Rule 26(a)(2)(B) and withstand summary judgment . . . [S]uch an effort is not contemplated by Rule 26(e)(1)." *Id.* at 462-63.

Rule 26(a) mandates that an expert report contain a *complete* statement of *all opinions* the expert will express at trial, because "[a] party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278-79 (4th Cir. 2005) (internal quotation marks and citation omitted). Accordingly, the Federal Rules impose an "automatic sanction" of exclusion of a party's expert witness for failure to adhere to the expert witness requirements set forth in Rule 26(a). *See S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 592 n.2 (4th Cir. 2003) ("The Rule 37(c) advisory committee notes emphasize that the automatic sanction of exclusion provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence.").

In *Southern States*, the Fourth Circuit articulated five factors a court can consider when deciding whether a failure to disclose was substantially justified or harmless under Fed. R. Civ. P. 37(c)(1). *Id.* at 597. But "[t]he court is not required, however, to tick through each of the *Southern States* factors." *Gomez v. Haystax Tech, Inc.*, 761 Fed. App'x 220, 229 (internal quotations and citation omitted). "The first four factors relate primarily to the harmlessness exception, while the last factor . . . relates mainly to the substantial justification exception." *Id.* (quotation and citation omitted). "The non-disclosing party bears the burden of establishing that the nondisclosure was substantially justified or harmless." *Id.* at 229-30. Here, the only attempt Plaintiff makes at arguing that the nondisclosure was "harmless" was that she asked a leading

question in cross-examining Miller at his deposition, in which she improperly re-casted Miller's original "confusion," ECF No. 50-1 p. 17, as a conclusive opinion that Miller "did not believe that Mr. Hill pointed a gun" at Trooper Layton. ECF No. 57 pp. 1-2. But that opinion was not contained in Miller's Report or Rebuttal, as discussed above, which would be the only opinions admissible at trial. In fact, Miller's Report and Rebuttal contained opposite opinions. For that reason, Miller's Declaration presents a new and entirely unanticipated theory of Plaintiff's case, offered only now, long after summary judgment briefing has closed.

Finally, in response to Defendants' motion for summary judgment, Miller's new and undisclosed affidavit also purports to opine on ballistics and autopsy matters. But Miller offered only a single line in his Report pertaining to "firearms instruction," experience which Miller now purports to call on to be able to analyze crime scene ballistics and autopsy reports. ECF No. 50-1 p. 4, ¶ 8; ECF No. 57 p. 1. Even assuming arguendo that these opinions were timely disclosed, which they were not, allowing such a specious expert to opine on the ultimate issue in this case will only serve to confuse the jury and frustrate the purpose of summary judgment: to identify *genuine* disputes of material fact, not to create them out of thin air by unqualified experts after the close of discovery.

## CONCLUSION

Federal Rule of Evidence 702 appoints trial judges as gatekeepers to protect the judicial process from unreliable expert testimony. *See, e.g., United States v. Blunder*, 795 Fed. App'x 180, 182 (4th Cir. 2019) (citation omitted). The importance of that gatekeeping function is heightened when a plaintiff, as is the case here, attempts to circumvent disclosure under Rule 26 and submits new and unfounded expert opinions in response to a motion for summary judgment.

For the forgoing reasons, this Court should exercise that function, apply Rule 37(c)'s "automatic sanction," and strike Miller's Declaration, ECF No. 50-1 pp. 2-6, from the record.

Respectfully submitted,

TROOPER SETH W. LAYTON
TROOPER BENJAMIN I. BONE

By: */s/ Robert B. McEntee, III*
    Counsel

Jason S. Miyares
Attorney General of Virginia

Steven G. Popps
Deputy Attorney General

Jacqueline C. Hedblom
Senior Assistant Attorney General/
Trial Section Chief

Robert B. McEntee, III (VSB No. 89390)*
Calvin C. Brown (VSB No. 93192)*
Assistant Attorneys General
Office of the Attorney General
202 North 9th Street
Richmond, VA 23219
Telephone: 804-786-8198 (McEntee)
Telephone: 804-786-4933 (Brown)
Facsimile: 804-371-2087
rmcenteeiii@oag.state.va.us
cbrown@oag.state.va.us
*Counsel for the Defendants*

**CERTIFCATE OF SERVICE**

I hereby certify that on April 3, 2023 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

                                             */s/ Robert B. McEntee, III*
                                             Robert B. McEntee, III (VSB No. 89390)
                                             Assistant Attorney General
                                             Office of the Attorney General
                                             202 North 9th Street
                                             Richmond, VA 23219