IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LATOYA K BENTON,
ADMINISTRATOR OF THE ESTATE OF
XZAVIER D. HILL, DECEASED,

    Plaintiff,

v.                                            Civil Action No. 3:22-cv-225 HEH

SETH W. LAYTON, *et al*

    Defendants.

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' SUPPLEMENTAL BRIEF

Defense counsel, in argument on rebuttal, made wild accusations that Plaintiff's counsel argued matters that were not in the record, that were not disclosed during discovery, including an internal affairs report by the Virginia State Police. As a result of these allegations, the court stated: "I want a short memorandum, no more than 10 pages, discussing the materials that were raised today in support of the motion --- in opposition for summary judgment that are not part of the record so that I can go right to those things and see whether or not they are a material part of the record." Tr. P. 64. Lines 17-23. Defense counsel, contrary to the court's order, re- argues their Motion for Summary Judgment and tries to persuade the court to disregard Plaintiff's evidence.

### A. Plaintiff argued the following material facts that are in Dispute and evidence exists in the Record which are Materially Disputed

1.    Troopers Bone and Layton get out of their cruiser with their guns drawn, though Mr. Hill is immobilized and unable to move his car or get out of his car. Report, Ex. 3, ECF # 47-8, 48-7, p. 10 of Report., Trooper Layton testified at his deposition that while they are trained to draw their weapons they are not trained to approach the car.

1

Troopers Layton and Bone exited the vehicle with their weapons drawn, both simultaneously screaming orders at victim Hill without any discussion and without any plan and rushed toward the car. ECF # 48-4; Ex. 2 Layton Dep. Pages 99-100. As to their" slow approach" defendants can be seen and heard breathing heavily minutes after the incident ended with Hill's death., see Def. Ex. 1 video 5:40-7:07.

Layton said during his deposition that, " It was a high risk stop". ECF# 48-4; Ex. 2 Layton Dep. Page 90 , lines 20-25.

Q. Okay. So, did your training ever teach you to exit your vehicle such as you and Trooper Bone did with your guns drawn to approach the vehicle? ECF# 48-4, 48-5; Ex.2, Layton Dep. Pg. 93,lines 12-14.

A. Our training did tell us to take our guns out, but in our training, there was no need to approach the car. ECF # 48-4, 48-5; Ex. 2, Layton Dep., lines 19,20.

2. Troopers Layton and Bone give inconsistent commands to Mr. Hill while Mr. Hill tells them his door does not open. Bone testified in his deposition : "But you were giving a demand, and Trooper Layton was giving a demand also? Both of you were giving demands of him? We were both, yes. Yes. " ECF #46-48 ; Dep Bone p. 98, lines 15-18.

3. At the hearing the Court is shown excerpts of Trooper Layton's Deposition testimony: "this is a key point because you will see Layton when I asked him did Mr. Hill comply when you asked him to do any of these commands? And Trooper Layton says, yes. When I told him to put his hands up, he put his hands up in front of his face. This is on Page 113, I believe of the trooper's – Trooper Layton's deposition." In the Record: ECF #48-5, (p.10 of 28); Exhibit #2, Dep. of Layton pp. 113, 114.

4. So, I asked Trooper Layton, at that point you've got a gun that's pointed at Mr.

Hill. Mr. Hill has his hands up in front of his face where you can see both hands. I said to Trooper Layton, is he in compliance? Trooper Layton said yes. Tr. P.33. In the Record, Layton Dep. Ex.2,, pp. 114 , lines 3-6; ECF #48-5 ( p 11 of 28),.

5. There are material facts in the record that indicate that Mr. Hill did not have a gun in his hand; that he did not point the gun at Trooper Layton and described by Troopers Bone and Layton:

a. The autopsy report indicates that Mr. Hill was shot in his left hand; bullet exits through palm of left hand and into his left side of his face; third bullet wound is in the back of his neck, ECF# 48-14 (p.6 of 37),(7-10 of 37) Exhibit # 5, p.4. This document indicates that Mr. Hill could not have picked up a gun and turned to point it at Trooper Layton as described by the Troopers.

b. The way the vehicle was slanted down an embankment, ECF # 43- 5; (p 3); Exhibit 6. This represents additional physical evidence to support Plaintiff's position that Mr. Hill did not point a gun at Trooper Layton as described as he could not sit up.

c. "Primer residue was collected from Hill at the scene, however, the results were not submitted to the lab for testing due to Bone and Layton both touching Hill when they removed him from the vehicle." ECF# 47-8; Exhibit # 3; p. 8. This represents spoliation of evidence, and an inference should be given that Mr. Hill never held a gun.

d. A picture identified by Trooper Bone in his deposition, has the gun tucked in between the upper part of the of the passenger seat and lower part of the seat. ECF # 47-25, Bone Deposition , Exhibit #8.

e. Troopers Bone and Layton indicated that "the suspect's hands were not touching the gun only because his torso and arms were being stopped by the center

3

console. ECF # 43, p.10.

    f.   It took Troopers Bone and Layton one and a half minutes to find the gun after Mr. Hill was shot and killed.

## B. Plaintiff's Retained Expert Witness Report and Deposition Consistent were part of the Record and Had previously been Disclosed to Defendants on November 28, 2022.

Plaintiff provided the Court with Mr. Miller's Declaration along with his report that had previously been provided to counsel on November 28, 2022. The Declaration and Expert Report were filed initially in the early morning hours of February 21, 2023, but because there were other documents filed not pertaining to the case, the clerk directed counsel for Plaintiff to refile the exhibits. The report was inadvertently left out of Exhibit 5 and the Court allowed Plaintiff's counsel to refile it. Plaintiff's Declaration and Expert Report are consistent with what had previously been provided to counsel.

Counsel for Defendants examined Mr. Miller extensively regarding his experience in firearms both with the NRA as an instructor and the Virginia Beach Police Department. ECF # 52-1; Miller Dep. Ex A., pp. 26-27.

On cross examination during Mr. Miller's deposition:

"Q.   Now, I believe in your report you indicated that you did not believe that Mr. Hill pointed a gun at him.

Now, with the deposition testimony of Mr. – of Trooper Bone and that he indicated that the weapon was held by Mr. Hill in his right hand above his – above his nose on the right side of his face, is it conceivable with that position of the gun as Trooper Bone testified that he could have been pointing it at Trooper Layton?

A.   Was he on the roof of the vehicle, ma'am?

4

Q. that's how he's pointed, straight up next to his face above his nose.

Mr. MCENTEE: Objection as to Form.

A. I don't know how he could do that, ma'am..... I can offer this. I don't know how the wounds that Mr. – the young boy, Mr. Hill, had in his hand and on the left side of his face. The position of the car and the position that I saw Mr. – Trooper Layton and trying to right himself. That's a lot. I don't know how he – you understand from a firearms perspective having shot from vehicles in training, it's more a turning towards so I know – know where my adversary or my target is. So, I don't know how – it would seem like to me if you turn to look at your adversary as he was – as Mr. Hill was when he was putting his arm out of the car he was turning more towards and looking to his left. I would have thought I would have saw (sic) an autopsy report where it was more frontal wounds.

Q. He would have had a bullet in his front face.?

A. I would think that, yes ma'am.

Counsel for Defendants did not follow up with any additional questions regarding Mr. Miller's experience or training to seek disqualifications of Mr. Miller's testimony."
ECF# 57-2, (pp. 4-5 of 17) Miller Deposition, pp. 204-205.

In addition, Mr. Miller provided this same opinion in his initial report. EC# 50-1( p.17 of 32), p. 11 of report.

Bone stated in his deposition that when asked where Mr. Hill had the firearm, he answered "inches from his head... right next to the right side of his head in his right hand." ... It was pointed toward top of windshield, then leveled slightly. ECF# 43-4 Dep Bone p. 105; Statement made to ECF # 47-8, (pp. 20); Ex. 3, Chappell pg. 10 line 26; . 2) Layton

5

" did not see gun, yelled reaching , reaching; video, transcribed by Chappell; Victim Hill pointed gun directly at Layton; Layton, I stepped back 8 feet from the vehicle when I saw Hill reaching... ;ECF# 47-8, 48-7; Plaintiff's expert witness has indicated he does not believe that Victim Hill was pointing a gun at Layton when Bone and Layton shot and killed him. He bases his opinion upon his experience with firearms and the autopsy report (he was shot in the left side of his face, left hand and back of his neck) if Victim Hill had pointed the gun at Layton the way he or Bone described Victim Hill would have been shot in the "frontal with wounds." Shot in the face. ECF# 57-2, ( Pp. 4-5 of 17), Dep. of Miller, Pages 204-205 lines 13-25; 1-5; ECF # 47-8;48-7; 50-1 (p.17 of 32).

The autopsy report is consistent with the opinion given in his report and at his deposition. The report is a part of the record. ECF# 47-8; 48-7; Exhibit 5. Plaintiff further incorporates the Memorandum in Opposition to Defendants' Motion to Exclude Expert witness.

### 3. Virginia State Police's Office of Internal Affairs Report Is a Part of the Record and Can be Considered by this Court

During the rebuttal argument on March 29, 2023, Defense counsel argues that : "it's plaintiff's burden to produce record evidence that's admissible at trial that would actually create a material dispute of fact." Tr. P. 62, lines 16-21. In fact evidence submitted in connection with summary judgment does not have to be presented in an admissible form. The trial court may consider the evidence on summary judgment provided the submitting party demonstrates that it would be possible to present the evidence in admissible form at trial. *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.* 790 F. 3d 532, 538 (4th Cir. 2015); see *Alexander v. CareSource*, 576 F. 3d. 551, 558 (6th Cir. 2009)(submissions by party opposing summary judgment need not

themselves be in form admissible at trial, but party "must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary").

Defendants provided Plaintiff the Virginia State Police's Office of Internal Affairs Report through discovery. ECF# 47-8; 48-7; Exhibit # 3. THEY CANNOT CRY NOW THAT THEY ARE SURPRISED IT CAN BE USED AS EVIDENCE. All documents must be authenticated before admissible as exhibits. Documents produced by the opposing party are deemed authenticated. *Orr v. Bank of Am.*, 285 F. 3d 764, 773 (9th Cir. 2002).

Defendants would have this court to believe that it comes as a surprise to them about the report that was in their possession from the get-go. They were asleep at the wheel and now want to argue it should be summarily dismissed as not credible and not admissible. Plaintiff has represented all along through discovery responses and initial disclosures that she may introduce any documents produced by Defendants.

Defendants argue that "Plaintiff relies on the report's transcription of dialogue from the dash cam video footage ... to dispute that Trooper Layton announced the presence of the gun in Hill's hand." ECF# 63, p.5, lines 4-6. Plaintiff offered the following argument during the hearing: ' In fact, there's nothing if you look at Chappell's report that says [Trooper Layton] ever saw a gun. He just went along kind of with Bone." ECF # 63, p. 5, lines 7-9. Defendants do not argue it is not in the record, they just argue it should not be considered. ECF # 63, p. 5.

Defendants argue that the report does not create a genuine dispute of material fact. ( Again, defense counsel argues their motion for summary judgment instead of

7

identifying documents not in the record.) In fact, the report sets forth the following:

LAYTON: Hey, he is reaching, reaching, reaching; Trooper Layton never sees a gun, nor does he yell gun. Def. .ECF# 43, Exhibit 1, 5:15, ECF# 47-8, 48-7; (p.12 of 25); Ex. 3, Chappell report, pg. 10. This report must be reviewed in conjunction with other evidence in this case. The video does not depict Layton saying gun before shooting Mr. Hill. He is only heard saying reaching, reaching. THIS IS IMPORTANT BECAUSE MR. HILL DID NOT POSE AN IMMINENT THREAT. See Graham v. Conner, 490 U.S.386, 396-97 (1989).

Defendants, not sure of the above argument, offer another, " the report is not part of the record. (Defendants should be sanctioned for such a statement), when the report is in the record ,ECF #47-8 48-7. Defendants argue that Plaintiff did not disclose that she intended to use the report at trial. ECF # 63, p. 6, lines1,2. Defendants attach Plaintiff's initial Discovery Disclosure, ECF # 63; Exhibit C. However, that exhibit indicates Plaintiff will use " Emails and other communications in regard to the incident involving Mr. Hill January 9, 2021".

The Chappell Report is a record of the Virginia State Police Department and can be introduced into evidence by the custodian of records consistent with Federal Rules of Evidence. FRE 901; FRE 902(11); FRE 902 (12).

### 4. There Exists a Picture Produced by Defendants of the gun "tucked in between the Back of Seat and Bottom of Seat on Passenger Side of Vehicle".

The picture of the gun, from Bone's deposition is tucked in between the back of the seat and bottom of the seat on the passenger side of the vehicle. : asked if that was the gun that he (Bone) located, he answered, "That's the gun." ECF #43-4; 47-25; 48-9, Dep. Bone pp. 114-115, lines 23-24, 1 (Exhibit 8). While Defense counsel does not

8

agree the gun was tucked in between the seat, a jury could determine otherwise from the picture.

### 5. Troopers Bone and Layton made inconsistent statements Regarding allegations that Mr. Hill Pointed a gun at Layton

Trooper Bone described Mr. Hill and the firearm as follows:

a. Q. ..."Where about did he have a firearm?

A. Right next to the right side of his head in his right hand.

Q. Next to the right side. Okay. Go ahead.

A. Okay. And he's holding it in a grip used to traditionally shoot a gun. So, it was initially pointed, like I said before, towards the windshield – like the top of the windshield. And then it was leveled slightly. And at that point is when I felt the threat was significant and I needed to go ahead and find my sights on my firearm, and pull the trigger on my firearm. ECF # 43-4 ,ECF# 48-9; Ex. # 9, Dep. Bone p. 105;

b. " He was raising it (pistol) up high enough for me to see and up righting his body... he came up with the gun, quickly and started to right himself almost to gain to control of his body with the gun in his hand firmly and that's when I fired, I believe two rounds, maybe three and he slumped over to the right, passenger seat." ECF# 47-8, 48-7; Chappell Report p.7, Ex. 3; p. 7, lines 7-11;

c. Trooper Bone later said the gun was pointed at Layton. ECF# 43-4; ECF# 48-9. Dep. Bone, p. 97, lines 3-8;

d. Layton indicated that "Xzavier D. Hill pointed a gun directly at him"

In the audio and video that was produced by him in discovery and in his deposition testimony he stated that he moved back from the vehicle 8 feet towards the back of the vehicle when he saw Xzavier D. Hill reaching. He never saw a gun, but just began

9

shooting. ECF# 47-8; 48-7;Ex. 3, pg., 9-11, pg. 22, line 18.Chappell Report.

Defense counsel urges this Court to accept Bone's statement that he saw a gun and ignore any other evidence in the record. ECF# 63, p.5, lines 19-21. This, the Court cannot do. Virginia is a "right to carry state" and just seeing a gun would not satisfy *Graham v. Conner, Id.*

### 5. <u>Layton and Bone acknowledge that Mr. Hill was "in compliance with their Commands prior to Shooting and Killing Him.</u>

Defendants have stated that victim Hill was in compliance when he responded to the ECF# 47-8;48-7; Ex. 3,Captain Robert P. Chappell Internal Affairs Report dated May 11, 2021 page 6, line 27-30; Bone said, "He put his hands up and he put them out the window, they were obviously shaking and his eyes were darty, he was looking around." Hill said, "I can't get out." Hill was compliant again when Layton told him to put his hands up, he put them up in front of his face as directed, and then Layton changed the command.ECF# 47-8; Ex. 2, Layton Dep. Pg 116. , Layton Dep. Ex.2, pp. 114 , lines 3-6; ECF #48-5 ( p 11 of 28),. Defendants have stated that victim Hill was in compliance when he responded to the commands of putting his hands up; victim Hill put his hands up; *see Layton Deposition and Report from Captain Chappell;* ECF # 47-8, 48-7;Ex. 3,Captain Robert P. Chappell Internal Affairs Report dated May 11, 2021 page 6, line 27-30; Bone said, "He put his hands up and he put them out the window, they were obviously shaking and his eyes were darty, he was looking around." Hill said, "I can't get out." Hill was compliant again when Layton told him to put his hands up, he put them up in front of his face as directed and then Layton changed command. ECF# 47-8; Ex. 2,Layton Dep. Pg 116 .

**MR. HILL POSED NO IMMINENT THREAT TO THE TROOPERS.**

For the reasons stated above the Plaintiff has stated material facts in dispute in this

10

case and Defendants' Motion for Summary Judgment should be denied.

LATOYA K. BENTON, ADMINISTRATOR
OF THE ESTATE OF XAZIER D. HILL,
DECEASED

By _____/s/_____
Verbena M. Askew, Esquire
Virginia State Bar #19511
THE VERBENA ASKEW LAW FIRM, P.C.
2 Eaton Street, Suite 708
Hampton, Virginia 23669
(757) 722-4100 Telephone
(757) 722-1801 Facsimile
vaskewlawfirm@verizon.net

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of April 2023, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Robert B. McEntee, III, Assistant
Attorney General
**Office of the Attorney General**
202 North 9th Street
Richmond, VA 23219
(804) 786-8198
(757) 453-7578 Fax
rmcenteeiii@oag.state.va.us

_____/s/_____
Verbena M. Askew, Esquire
Virginia State Bar #19511
THE VERBENA ASKEW LAW FIRM, P.C.
2 Eaton Street, Suite 708
Hampton, Virginia 23669
(757) 722-4100 Telephone
(757) 722-1801 Facsimile
vaskewlawfirm@verizon.net